48

United States District Court
Office of the Clerk
Eastern District of Texas

David J. Maland                                         100 E Houston Street
        Clerk                                          Marshall, TX 75670
November 14, 2007                                      903 935 2912


Mr. John P Mayer, Clerk of Court
Eastern District of Michigan
814 Theodore Levin US Courthouse
 231 West Lafayette Boulevard          Case: 2:07-cv-15000
Detroit, MI 48226                      Judge: Edmunds, Nancy G
                                       Referral MJ: Whalen, R. Steven
Case Number # 2:07cv173                Filed: 11-26-2007 At 09:47 AM
Style: Gary Weinstein et al vs UGS Corp   TRANS WEINSTEIN V. UGS CORP (DA)


Dear Clerk:

Pursuant to an order from our court, we are transferring to your District the above entitled cause
of action.  We are forwarding certified copies of the order of transfer, docket sheet, complaint,
and sealed documents if any.

In February 2004, the Eastern District of Texas implemented CM/ECF.  You may access our
electronic case file at the following web address: **http://ecf.txed.circ5.den.**  We have assigned a
login and password for the district courts to use in accessing this information.  The login is
_____MIED_____ and the password is _____transfer!_____.

The login and password should not be shared with anyone other than federal court personnel who
would have a need to access our electronic case file system.  You will need Adobe Acrobat
reader loaded on your computer in order to view the documents.

If you need help accessing our electronic file call our help desk at 1-903-794-8561.

Please acknowledge receipt of these documents on the copy of this letter and return it to this office in the
enclosed envelope.

                                       Sincerely,
                                       David J. Maland, Clerk
                                       By_____
                                              Deputy Clerk

Enclosures

Received items described above on this date_____

and assigned Case Number_____.
                                       Clerk, U.S. District Court

FILED-CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

2007 MAY -1 PM 2: 40

TX EASTERN-MARSHALL

BY_____

| | |
|---|---|
| GARY WEINSTEIN, Individually and as Representative of the Estate of JUDITH WEINSTEIN, as Representative of the Estate of ALEXANDER WEINSTEIN, and as Representative of the Estate of SAMUEL WEINSTEIN, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Plaintiffs.

vs.

UGS CORP.

Defendant.

CIVIL ACTION NO. **2 - 0 7 C V - 1 7 3**

Case: 2:07-cv-15000
Judge: Edmunds, Nancy G
Referral MJ: Whalen, R. Steven
Filed: 11-26-2007 At 09:47 AM
TRANS WEINSTEIN V. UGS CORP (DA)

## PLAINTIFFS' ORIGINAL COMPLAINT

Come now Plaintiffs Gary Weinstein, Individually and as Representative of the Estate of Judith Weinstein, as Representative of the Estate of Alexander Weinstein, and as Representative of the Estate of Samuel Weinstein complaining of UGS Corp., respectfully showing the Court as follows:

### I.
### PARTIES

1.1    Plaintiff Gary Weinstein sues in his individual capacity for the wrongful death of his wife, Judith Weinstein, and his sons, Alexander and Samuel Weinstein. He also sues as Representative of the Estate of Judith Weinstein, Representative of the Estate of Alexander Weinstein, and Representative of the Estate of Samuel Weinstein. At all times pertinent to this action, Gary Weinstein was a citizen and resident of Michigan.

A TRUE COPY I CERTIFY
DAVID MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT, TEXAS
By: _____

Plaintiffs' Original Complaint

1.2    Defendant UGS Corp. (referred to herein as "UGS") is a Delaware corporation with its principal place of business in Plano, Texas, in the Eastern District of Texas, and may be served with service of process at Corp. Service Co., d/b/a CSC-Lawyers, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## II.
### JURISDICTION AND VENUE

2.1    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because this action, which has a controversy in excess of $75,000, is between citizens of different states.

2.2    This Court has personal jurisdiction over the Defendant, both generally and with regard to this specific action, that the exercise of personal jurisdiction over it is proper.

2.3    This is a proper venue, pursuant to 28 U.S.C. §1391(a) and (b), because it is a district in which Defendant resides and because a substantial part of the events giving rise this claim occurred in this judicial district.

## III.
### GENERAL ALLEGATIONS OF FACT

3.1    On May 3, 2005, Judith Weinstein was driving her two sons, Alexander (age 12) and Samuel (age 9), to the orthodontist's office. At approximately 3:30 p.m., Mrs. Weinstein was in the left hand lane of the road, waiting to turn left into the office parking lot.

3.2    At that time, Thomas Wellinger was driving his sport utility vehicle down the road when he plowed into the back of Mrs. Weinstein's vehicle at 70 miles per hour.

3.3    At the time of the accident, Mr. Wellinger had a blood alcohol level of almost 0.40 (several times over the legal limit).

3.4     As a result of the collision, Judith Weinstein, Alexander Weinstein, and Samuel Weinstein all sustained fatal injuries. Mr. Wellinger survived the accident.

3.5     Thomas Wellinger was an executive director of sales for UGS. At the time of the accident, he was the Global Director, in charge of a sales team.

3.6     Mr. Wellinger's superior was Ed Arlin, an Executive Vice President for UGS.

3.7     In January 2005, Ed Arlin asked two UGS employees to confront Thomas Wellinger with his suspicion that Mr. Wellinger had a serious drinking problem. UGS enrolled Mr. Wellinger in an abbreviated, 5-day rehabilitation program. The program was too abbreviated to be effective.

3.8     After Mr. Wellinger returned to work at UGS from the rehabilitation program, he continued to exhibit signs of alcohol abuse. It was obvious to numerous people at UGS, including Mr. Arlin, that their executive employee had serious drinking problems.

3.9     On May 3, 2005, Ed Arlin had a meeting with Thomas Wellinger in which he confronted Mr. Wellinger with his continued job performance problems that he believed were associated with his alcohol abuse. During that meeting, Mr. Arlin explained the plan of action UGS had decided to take as a condition of continuing Mr. Wellinger's employment as an executive at the company. Mr. Arlin, with the approval of executives at UGS's home office, directed Mr. Wellinger to see a psychiatrist that afternoon and to report back to him with the doctor's recommendations for treating Mr. Wellinger's alcohol problems.

3.10    The decisions regarding how to handle Mr. Wellinger and his problem with becoming drunk during his working hours at UGS were made, ratified, and/or approved by personnel in UGS's corporate headquarters, in Texas. UGS personnel at

the highest levels, including Tony Affuso, the Chairman, CEO, and President of UGS, who was located in Texas, had personal knowledge of Mr. Wellinger's continuing alcohol abuse and made decisions as to how UGS would use alcohol rehabilitation programs and would continue to actively employ Mr. Wellinger even though he was in a state of obvious intoxication during the workday.

3.11    On May 3, 2005, Thomas Wellinger arrived at his UGS office at 7:25 a.m. Other than leaving the office for about an hour for lunch, he was at the office continuously from that time until he left the office shortly after 2:30 p.m. for the psychiatric appointment he was directed to attend by Mr. Arlin. He had a meeting with a manager minutes before he left that afternoon. At the time of the accident, Mr. Wellinger was driving from his UGS office to his psychiatric appointment, with a blood alcohol level of approximately 0.40. A blood sample taken at 5:15 p.m. that day showed 435 mg/dL of Ethyl Alcohol. A blood sample taken the morning after the accident showed Mr. Wellinger still had an alcohol level above the legal limit (114 mg/dL).

3.12    Thomas Wellinger, an executive for UGS, had been drinking at his office on the day of the accident and was obviously intoxicated during his meetings with upper management that day before he was directed to attend an appointment with his psychiatrist that afternoon.

3.13    Thomas Wellinger's consumption of alcohol during the workday at his UGS office and his obvious intoxication upon leaving the UGS office during the workday on May 3, 2005, was a proximate cause of the accident that claimed the lives of Judith Weinstein, Alexander Weinstein, and Samuel Weinstein.

## CLAIMS FOR RELIEF

### IV.
#### NEGLIGENCE

4.1    UGS committed acts of omission and commission, collectively and severally constituting negligence, which were a proximate cause of the accident and the damages suffered by Plaintiffs.

4.2    UGS's acts of negligence that proximately caused the accident and injuries include vicarious liability under the doctrine of *respondeat superior* for the negligent conduct of its employee, Thomas Wellinger, committed in the course and scope of his employment for UGS.

4.3    UGS's acts of negligence that proximately caused the accident and injuries include vicarious liability for the negligent conduct of its vice-principal, Thomas Wellinger, committed in the workplace.

4.4    UGS's acts of negligence that proximately caused the accident and injuries include independent liability for negligently controlling a highly intoxicated employee during the workday, including sending him to drive to an appointment despite his state of obvious intoxication.

4.5    UGS's acts of negligence that proximately caused the accident and injuries include independent liability for negligently retaining and supervising Thomas Wellinger.

4.6    UGS's acts of negligence that proximately caused the accident and injuries include independent liability for undertaking a duty to control a habitually drunken and highly intoxicated employee and failing to perform these tasks as would a reasonably prudent employer, which increased the risk of harm to others.

## V.
### GROSS NEGLIGENCE

5.1     UGS committed gross negligence, which was a proximate cause of the injuries to Plaintiffs and the damages of Plaintiffs, and for which Plaintiffs are entitled to recover punitive damages.  Specifically, UGS was subjectively aware of the risk created by Thomas Wellinger's drinking problem and its continued employment of Mr. Wellinger in spite of his drinking problem. Although UGS was subjectively aware of this risk, it continued to employ Mr. Wellinger and direct him to go to his doctor's appointment during the workday while he was obviously intoxicated in conscious disregard for the welfare, safety, and rights of others such as the Weinstein family. Further, as a vice-principal of UGS, the conduct of Thomas Wellinger committed at his workplace constituted gross negligence on behalf of the corporation.

### DAMAGES

## VI.
### COMPENSATORY DAMAGES

6.1     Plaintiff Gary Weinstein seeks compensatory damages arising from the wrongful deaths of his wife, Judith Weinstein, and his sons, Alexander and Samuel Weinstein, to compensate him for all pecuniary and non-pecuniary elements of wrongful death damages allowed by law, including past and future loss of love, comfort, companionship, and society; past and future mental anguish; and past and future loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that he would have received if not for the untimely deaths of his wife and sons.

6.2     Plaintiff Gary Weinstein, as Representative of the Estate of Judith Weinstein, Representative of the Estate of Alexander Weinstein, and Representative of

the Estate of Samuel Weinstein, seeks compensatory survival damages to compensate for all elements of survival damages allowed by law, including medical expenses, funeral and burial expenses, and conscious pain and suffering.

## VII.
### PUNITIVE DAMAGES

7.1     Because UGS is guilty of gross negligence, it should have punitive damages assessed against it in an amount deemed appropriate by the jury.

## VIII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

8.1     Plaintiffs seek pre-judgment and post-judgment interest as provided by law.

## IX.
### CONDITIONS PRECEDENT

9.1     All conditions precedent to Plaintiffs' rights to recover herein and to Defendant's liability have been performed or have occurred.

## X.
### JURY DEMAND

10.1     Plaintiffs request a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray Defendant be cited to appear and answer herein, this cause be set down for trial before a jury, and Plaintiffs recover judgment of and from Defendant for their actual and exemplary damages, in such amount as the evidence shows and the jury determines to be proper, together with pre-judgment interest and post-judgment interest, costs of suit, and such other and further relief to which Plaintiffs may show themselves to be entitled, whether at law or in equity.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

By:

MIKAL C. WATTS
State Bar No. 20981820
Federal ID No. 12419
Attorney-in-Charge

FRANCISCO GUERRA, IV.
State Bar No. 00796684
Federal ID No. 22568
Of Counsel

Bank of America Plaza, Suite 100
300 Convent Street
San Antonio, Texas 78205
Phone: (210) 527-0500
Fax:    (210) 527-0501

GOUDARZI & YOUNG
Brent Goudarzi
State Bar No. 00798218
Welby K. Parish Law Bldg.
301 North Titus Street
Gilmer, Texas  78644
Phone: (903) 843-2544
Fax:    (903) 843-2026

ATTORNEYS FOR PLAINTIFFS

Case 2:07-cv-00173-TJW    Document 1-2    Filed 05/01/2007    Page 1 of 1

JS-44 (Rev 11/04)

# CIVIL COVER SHEET

2-07 CV-173 TJW

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Gary Weinstein, Ind and as Rep of the Estate of Judith Weinstein as Rep of the Estate of Alexander Weinstein and as Rep of the Estate of Samuel Weinstein

### DEFENDANTS
UGS Corp a Delawre Corp. with its Principal place of business in Plano, Texas

RECEIVED

(b) County of Residence of First listed Plaintiff _____
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant ____ DISTRICT OF TEXAS
(IN US PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE LAND INVOLVED

MAY 0 1 2007

(c) Attorney's (Firm Name, Address, and Telephone Number)
Mikal C Watts and/or Francisco Guerra @ Watts Law Firm, L L P,
300 Convent, Ste 100, San Antonio, Texas 78205

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U S Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☒ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
28 U.S.C. 1332(a)
Brief description of cause:
Wrongful Death

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE April 30, 2007

SIGNATURE OF ATTORNEY OF RECORD
Edward W. Allred

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG JUDGE |
|---|---|---|---|---|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GARY WEINSTEIN, Individually and as Representative of the ESTATE OF JUDITH WEINSTEIN, as Representative of the ESTATE OF ALEXANDER WEINSTEIN, and as Representative of the ESTATE OF SAMUEL WEINSTEIN, | § § § § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 2-07CV-173 JURY |
| vs. | § § | |
| UGS CORP., | § § | |
| *Defendant.* | § | |

## MOTION TO TRANSFER VENUE, RULE 12(b)(6) MOTION TO DISMISS, AND MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY AND BRIEF IN SUPPORT

TO THE HONORABLE COURT:

Pursuant to 28 U.S.C. §§ 1404(a) & (b), Federal Rule of Civil Procedure 12(b)(6), and

Texas Civil Practice and Remedies Code § 33.004, Defendant UGS Corp. ("UGS") files this

Motion to Transfer Venue, Rule 12(b)(6) Motion to Dismiss, and Motion for Leave to Designate

Responsible Third Party and Brief in Support,[1] and respectfully shows the Court the following:

### I. INTRODUCTION

This action is a personal injury case that Plaintiffs should have brought, if at all, in the

Eastern District of Michigan. The fatal vehicle collision that is the basis of this suit occurred in

Oakland County Michigan involving only Michigan residents and has been extensively

investigated and litigated in Michigan. Every pertinent factor under 28 U.S.C. § 1404 calls for

---

[1] UGS files its Motion to Dismiss subject to and without waiving its Motion to Transfer Venue. Also UGS' motion to designate Thomas Wellinger as a responsible third party under Texas law is filed subject to and without waiver of its Motion to Dismiss on the grounds that Michigan law applies and is dispositive.

the Court to transfer this action to the Eastern District of Michigan. Should the Court maintain venue in this district, UGS requests transfer to the Sherman Division because any UGS Texas witness would be located in Plano, Texas, while no witness or evidence is in this division. In the alternative, UGS moves to dismiss Plaintiffs' Original Complaint because Plaintiffs cannot state a claim under applicable Michigan law and alternatively, cannot state a claim under Texas law. Finally, UGS moves to designate the primary tortfeasor Thomas Wellinger ("Wellinger") as a responsible third party if the Court determines that Texas law applies.

## II. FACTUAL BACKGROUND

On the afternoon of May 3, 2005, Wellinger was driving while intoxicated and struck and killed Judith, Alexander and Samuel Weinstein in Farmington Hills, Michigan after leaving UGS' Livonia, Michigan offices. (Complaint ¶¶ 3.1-3.2 & 3.4; Ring Aff. ¶¶ 1-2 & Ex. A at pp. 7, 11, 13, Ex. B at pp. 32-33, 35-36, 39-43, 56.) UGS employed Wellinger as a sales executive in Michigan. (Sanderson Decl. ¶ 2.) After the Farmington Hills police department conducted an extensive investigation (Ring Aff. ¶ 1-2 & Exs. A & B), prosecutors in Oakland County Michigan charged Wellington with second degree murder (Ring Aff. ¶ 4 & Ex. D at 69-71). The Oakland County Michigan Circuit Court found Wellinger guilty and sentenced him to nineteen years in prison in the Michigan Department of Corrections, where Wellinger is currently incarcerated. (Ring Aff. ¶ 4 & Ex. D at 66-68.)

The Plaintiffs, witnesses and relevant evidence are all located in Michigan and the accident has been the subject of a police investigation, a criminal proceeding, probate court proceedings and at least three other civil actions – all in Michigan. (*See generally* Ring Aff. & Exs. A-D.) During the course of its investigation, the Farmington Hills police department took statements from more than a dozen of Wellinger's co-workers, including his supervisor, Ed Arlin – all of whom are Michigan residents. (Ring Aff. ¶¶ 1-2 & Ex. A at pp. 1-24, Ex. B at pp. 45-55;

Sanderson Decl. ¶¶ 2-4.)  The Farmington Hills police seized physical evidence from Wellinger and UGS in Michigan, including UGS' elevator pass log and Wellinger's work laptop and personal vehicle. (Ring Aff. ¶¶ 1-2 & Ex. A at pp. 25-31, Ex. B at pp. 34-44.)  Farmington Hills police turned to the Michigan State Police for analysis of both Wellinger's blood sample and the "black box" crash data from Wellinger's vehicle. (Ring Aff. ¶ 2 & Ex. B at pp. 32-33, 38, 56-57.)

Plaintiff Gary Weinstein admits that he is a Michigan resident.  (Complaint ¶ 1.1.)  Additionally, probate proceedings as to all of Plaintiffs' decedents are pending in Oakland County Michigan Probate Court. (Ring Aff. ¶ 3 & Ex. C at pp. 59-62.)  On January 17, 2007, Plaintiff Weinstein agreed to settle a similar wrongful death action against other defendants, and the Michigan probate court approved that settlement.  (Ring Aff. ¶ 3 & Ex. C at pp. 61-62.)  Similarly, any settlement of this action would have to be approved by the Oakland County Michigan Probate Court.  Plaintiff Weinstein also sued his automobile insurer in Oakland County Michigan (Ring Aff. ¶ 4 & Ex. D at 88-92) and listed numerous witnesses or categories of witnesses located in Michigan (Ring Aff. ¶ 4 & Ex. D at pp. 93-95; Sanderson Decl. ¶¶ 2-4).

Other civil litigation in Michigan has focused on Wellinger and the accident. Wellinger's insurer sued him in Oakland County Michigan claiming that Wellinger's automobile insurance lapsed by the time of the collision with Plaintiffs' decedents. (Ring Aff. ¶ 4 & Ex. D at pp. 96-100.)  Several of UGS' employees were subpoenaed and noticed for depositions in that lawsuit. (Ring Aff. ¶ 4 & Ex. D at pp. 106-113.)  Witness lists in that action named several UGS Michigan employees and other Michigan witnesses. (Ring Aff. ¶ 4 & Ex. D at pp. 113-135; *see also* Sanderson Decl. ¶¶ 2-4.)  Wellinger's employment records and their relation to Wellinger's job performance and mental state before the collision became the focus of yet another Oakland County Michigan lawsuit. (Ring Aff. ¶ 4 & Ex. D at pp. 136-138.)

The nexus between this action and Michigan is overwhelming. Despite the indisputable quality and quantity of connections to Michigan, Plaintiffs sued UGS in Texas. Plaintiffs' claim to Texas venue rests solely on the implausible allegation that the Plano-based President and CEO of UGS, a company with over 7,000 employees, ratified decisions about how to deal with Wellinger, a Michigan employee with a drinking problem. (Complaint ¶ 3.10.) Even if taken as true, the convenience of one witness with the means to travel to Michigan does not outweigh the inconvenience to scores of others – including several non-party witnesses – who reside in Michigan. (Sanderson Decl. ¶ 2-4.) Thus, for the reasons set out below, UGS requests that the Court transfer this action to the Eastern District of Michigan or, alternatively, transfer this action to the Sherman Division of the Eastern District of Texas.

### III. MOTION TO TRANSFER VENUE

#### A. The Court Should Transfer This Action to the Eastern District of Michigan.

A Federal court may transfer venue to any other proper judicial district "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C § 1404(a). For the reasons stated below, the Eastern District of Michigan is a proper judicial district in this diversity case because UGS resides in that district and a substantial part of the events or omissions giving rise to the claim occurred in that district. 28 U.S.C. § 1391(a). In deciding a motion to transfer venue, the Court must make an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The case-specific factors that a court must apply to a motion to transfer fall into two categories of interests: (1) the convenience of the litigants and (2) the public interests in the fair and efficient administration of justice. *Int'l Software Sys. Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996); *Robertson v. Kiamichi*

*R.R. Co.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

The Fifth Circuit and courts within this district apply this factor-based method of analysis. *See, e.g., Walter Fuller Aircraft Sales v. Repub. of Philippines*, 965 F.2d 1375, 1389 (5th Cir. 1992); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999). Convenience factors include: (1) the convenience of parties and witnesses; (2) the place of the alleged wrong; (3) the cost of obtaining the attendance of witnesses; (4) the accessibility and location of sources of proof; (5) the possibility of delay and prejudice if transfer is granted; and (6) plaintiff's choice of forum. *See, e.g., Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830-33 (E.D. Tex. 2002); *Lindloff v. Schenectady Int'l*, 950 F. Supp. 183, 185-186 (E.D. Tex. 1996) (weighing a combination of factors). Public interest factors consist of (1) any administrative difficulties; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *See Walter Fuller Aircraft Sales*, 965 F.2d at 1389. All of these factors point to Michigan as the more appropriate venue.

1. **The Convenience Factors Weigh in Favor of Transfer to the Eastern District of Michigan.**

   a. **The parties and witnesses are located in the Eastern District of Michigan.**

The convenience of witnesses is often considered the most important factor when deciding whether to transfer venue. *See Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994). Virtually every possible witness about the accident is located in Michigan. (Ring Aff. ¶¶ 1-2, 4 & Ex. A at pp. 1-24, Ex. B at pp. 45-57, Ex. D at pp. 93-95, 114-135; Sanderson Decl. ¶¶ 2-4.) All of Defendant's employees who would have any personal knowledge of the accident are in Michigan. (Sanderson Decl. ¶¶ 3-4.) Wellinger's

supervisor Ed Arlin and more than a dozen other co-workers, who gave statements to and were interviewed by the Farmington Hills police during the investigation, all reside in Michigan. (Ring Aff. ¶¶ 1-2 & Ex. A at pp. 1-24, Ex. B at pp. 45-55; Sanderson Decl. ¶ 3.)   All of these witnesses are relevant not only to the determination of Plaintiffs' claims against UGS, but they are key witnesses to UGS' Responsible Third Party allegations against Wellinger.  (*See infra* Part V.)

Even more importantly, the convenience of *non-party* witnesses dictates transfer of this case to Michigan. *See In re Triton Sec. Litig.*, 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999) (the convenience of non-party witnesses is of paramount importance).  Wellinger, a key non-party witness, is currently incarcerated in Michigan. (Ring Aff. ¶ 4 & Ex. D at pp. 67-68; *see also infra* Part V.)  Investigating officers Bretz and Plemmons of the Farmington Hills police department are located in Michigan. (Ring Aff. ¶¶ 1-2 & Ex. A at pp. 1-2, Ex. B at pp. 34-55.) Dr. Felix Adatsi, Ph.D., the Michigan State Police toxicologist who analyzed Wellinger's blood sample and drew conclusions as to Wellinger's level of intoxication on the day of the crash is also located in Michigan. (Ring Aff. ¶ 2 & Ex. B at 32-33.)  Finally, Wellinger's girlfriend Sally Baker is also located in Michigan. (Ring Aff. ¶ 1 & Ex. A at pp. 3-4, 9-11, 21-23.)   As with the party witnesses, all of these non-party witnesses are relevant both to Plaintiffs' claims against UGS, and are key witnesses to UGS' Responsible Third Party allegations against Wellinger. (*See infra* Part V.)

In the recent case of *In re Volkswagen A.G.*, the Fifth Circuit found that a distance of 390-400 miles between the witnesses and the Plaintiff's chosen forum called for transfer:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with

overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

371 F.3d 201, 205-06 (5th Cir. 2004). Because the witnesses at issue here are located approximately 1000 miles from Marshall, Texas – more than twice the distance at issue in *In re Volkswagen* – the Court should transfer this case.

Plaintiff Gary Weinstein is a citizen and resident of Michigan. (Complaint ¶ 1.1.) In addition to suing in his individual capacity, Plaintiff Weinstein also sues as representative of the estates of Judith, Alexander and Samuel Weinstein, all of whom were residents of Michigan. (*See generally* Complaint.) Plaintiff Weinstein has also begun probate proceedings for all three estates in Michigan. (Ring Aff. ¶ 3 & Ex. C at pp. 59-62.) Accordingly, Plaintiffs are all located in Michigan. With all parties and witnesses located in Michigan, the Court should transfer this action to the Eastern District of Michigan.

### b. The place of the alleged wrong is the Eastern District of Michigan.

In personal injury cases, courts often consider the location of the accident as the place of the alleged wrong. *See In re Volkswagen A.G.*, 371 F.3d 201, 205 (5th Cir. 2004); *see also Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 833 (E.D. Tex. 2002); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 657-58 (E.D. Tex. 1999). Wellinger left work at UGS' Livonia, Michigan offices and the collision occurred in Farmington Hills, Michigan. (Ring Aff. ¶¶ 1-2 & Ex. A at 1-24, Ex. B at pp. 35-37, 39-43, 45-57.) The resulting criminal proceedings occurred in Oakland County Michigan. (Ring Aff. ¶ 4 & Ex. D at pp. 63-87.) Thus, the place of the alleged wrong in this venue analysis is in the Eastern District of Michigan.

The Fifth Circuit has found, under virtually identical facts that venue should have been transferred to the location of the accident. *In re Volkswagen A.G.*, 371 F.3d 201, 205 (5th Cir. 2004) ("By failing to consider the situs of the accident as it related to [the Defendant's allegations against the responsible third parties], the Eastern District Court abused its discretion."). In that case, the Plaintiff, who was driving a Volkswagen, was injured in San Antonio, Texas by a drunk driver driving a truck with the truck owner's permission. *Id.* at 202. Plaintiff sued Volkswagen in Marshall, Texas for her injuries on a product liability theory, claiming that the place of the alleged wrong was in Germany where decisions about design and manufacture of the vehicle were made. *Id.* at 205. Volkswagen filed a motion under Texas Civil Practice and Remedies Code section 33.004 to join the drunk driver and the car's owner, alleging that the drunk driver and truck owner may have been liable for all or part of Plaintiff's damages. *Id.* at 202. The Eastern District court agreed, finding that the place of the alleged wrong was in Germany. *Id.* at 205. The Fifth Circuit reversed, concluding that the Court abused its discretion as to the "place of the alleged wrong" and transferred the case to the district court for the site of the accident. *Id.* at 205-06.

Here, UGS contemporaneously files its Motion for Leave to Designate Responsible Third Party, designating the primary tortfeasor Thomas Wellinger as a responsible third party under Texas Civil Practice and Remedies Code section 33.004.[2]   (*See infra* Part V.)   Although Wellinger will be designated rather than formally joined, UGS' request "to seek a jury determination as to proportionate responsibility is similarly derived from Texas statutory law and

---

[2] UGS is unable to formally implead Wellinger because the Court would have no personal jurisdiction over him. This fact further highlights that this case should be tried, if at all, in Michigan, although Chapter 33 no longer requires formal joinder and UGS can simply designate Wellinger even though the Court lacks personal jurisdiction over him. *See* TEX. CIV. PRAC. & REM. CODE § 33.004(i). UGS' designation is made subject to and without waiver of the argument in its Motion to Dismiss that Michigan law applies and is dispositive. (*See infra* Part IV.A.)

is of equal dignity and import as Plaintiff's claim." *Id.* at 204. Thus, the Court must consider the convenience of the parties and witnesses in light of the fact that any jury will have to apportion fault for Plaintiffs' damages between UGS and Wellinger. Accordingly, the Court should transfer this action to the Eastern District of Michigan.

### c. The cost of obtaining attendance of the witnesses will be significantly less in Michigan.

The prohibitive cost of dozens of witnesses being forced to travel from Michigan to Texas dictates that this case should be transferred. UGS' employees will have to travel approximately 1000 miles from eastern Michigan to east Texas, incurring expenses for travel, food and lodging. *See In re Volkswagen A.G.*, 371 F.3d 201, 205-06 (5th Cir. 2004) ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses . . . ."); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 658 (E.D. Tex. 1999) (even a venue only 200 miles from witness' residence would result in food and overnight lodging expenses) (Sanderson Decl. ¶¶ 2-4.) UGS would suffer the lost time and productivity of several employees. In addition to these expenses, any non-party witness may seek to quash a subpoena unless UGS reasonably compensates the non-party witness. FED. R. CIV. P. 45 (c)(3)(B)(iii). Thus, UGS will incur substantial expenses for travel, food, lodging, non-party witness compensation, and the unnecessary loss of employee time unless the Court transfers this case.

### d. The sources of proof are in Michigan.

The relevant evidence is in Michigan. Farmington Hills, Michigan police seized Wellinger's work laptop computer containing potentially relevant evidence of his activities. (Ring Aff. ¶ 2 & Ex. B at pp. 34-47.) The Michigan State Police lab results, UGS' employment records, and other documentary evidence are all in Michigan. (Ring Aff. ¶¶ 1-2 & Ex. A at 25-

31, Ex. B at pp. 32-44.)  The depositions of many of UGS' employees have already been taken in Michigan in other civil cases pending in Michigan.  (Ring Aff. ¶ 4 & Ex. D at pp. 106-113.) Although UGS cannot say whether any specific witness would be unwilling to travel to Texas, the availability and necessity of compulsory process is another factor to consider with respect to the available sources of proof.  *See Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 658 (E.D. Tex. 1999).  Because every non-party witness resides in Michigan, approximately 1000 miles away, any subpoena for these witnesses is subject to being quashed.  FED. R. CIV. P. 45; (*see also* Part III.A.1.a., *supra*).  Thus, the Court should transfer this case to the district where the witnesses and documents are located.

> e.  **Plaintiff will not be prejudiced or delayed by transfer.**

Plaintiff will not be delayed or prejudiced by the transfer.  The complaint was filed on May 1, 2007, approximately one month ago and nearly two years after the collision.  (*See* Complaint.)  This case has not been set for trial, no scheduling order has been entered and no discovery has been conducted.  *See Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 658 (E.D. Tex. 1999) (discussing similar relevant facts).  As this motion clearly shows, the ready availability of witnesses and proof in Michigan should produce a speedier trial.  Furthermore, the median times between filing and disposition by trial are roughly equivalent in the Eastern District of Texas and the Eastern District of Michigan.  *See* http://www.uscourts.gov/judbus2006/appendices/c10.pdf  (last visited June 5, 2007) (17.7 months for the Eastern District of Texas and 24.0 months for the Eastern District of Michigan). Finally, the Fifth Circuit has suggested that delay and prejudice might be relevant but only if established by clear and convincing evidence.  *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002).  Plaintiffs cannot establish such prejudice.  Accordingly, this case should be transferred.

### f. The Plaintiffs' choice of forum has little value.

Where, as here, the Plaintiffs' chosen forum has little or no connection to the alleged events, that choice is afforded little weight. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830-32 (E.D. Tex. 2002) ("Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."); *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d at 656 (E.D. Tex. 1999); *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998); *Lindloff v. Schenectady, Int'l*, 950 F. Supp. 183, 185 (E.D. Tex. 1996); *Fletcher v. Exxon Shipping Co.*, 727 F. Supp. 1086, 1087 (E.D. Tex. 1989); *see also Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) (sustaining transfer order against plaintiff's argument that its choice of forum should not be disturbed). Furthermore, courts scrutinize a plaintiff's choice of forum when the plaintiff does not live in the chosen forum. *Dearing v. Sigma Chem. Co.*, 1 F. Supp. 2d 660, 665 (S.D. Tex. 1998) (citing *United Sonics, Inc. v. Shock*, 661 F. Supp. 681, 682-83 (W.D. Tex. 1986)). Accordingly, the Court should transfer this case.

### 2. The Public Interest Factors Weigh in Favor of Transfer to the Eastern District of Michigan.

#### a. No significant administrative difficulties would result from transfer to the Eastern District of Michigan.

As already shown above, the median times between filing and disposition by trial are roughly equivalent in the Eastern District of Texas and the Eastern District of Michigan. *See* http://www.uscourts.gov/judbus2006/appendices/c10.pdf (last visited June 5, 2007) (17.7 months for the Eastern District of Texas and 24.0 months for the Eastern District of Michigan). With no material differences between these two dockets, the Court should transfer this case.

### b. Michigan has a local interest in adjudicating this local dispute.

The people of Michigan have a definite interest in adjudicating this dispute between an employer who resides in and does significant business in Michigan and Michigan residents, including Plaintiff and the primary tortfeasor Wellinger. *See Shoemake v. Union Pac. R.R. Co.,* 233 F. Supp. 2d 828, 835 (E.D. Tex. 2002) (citizens of the forum where the injury occurred have "a strong local interest in resolving [the] suit."). Texas has little or no interest in the outcome of a personal injury suit involving almost exclusively Michigan residents.

### c. Texas citizens would be unfairly burdened with jury duty in this case.

Texas jurors would be unfairly burdened with jury duty in this case because the people of Michigan have a strong interest in resolving this dispute between its citizens and a resident business. *In re Volkswagen A.G.,* 371 F.3d 201, 205-06 (5th Cir. 2004); *see also Shoemake v. Union Pac. R.R. Co.,* 233 F. Supp. 2d 828, 835 (E.D. Tex. 2002). Where, as here, the Plaintiffs, responsible third party and witnesses all reside in the place of the alleged wrong, the case has no meaningful connection to the Plaintiffs' chosen forum. *See In re Volkswagen A.G.,* 371 F.3d at 206. Thus, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* (quoting *Gulf Oil v. Gilbert,* 330 U.S. 501, 508-09 (1947)).

### d. This action unnecessarily burdens the Court with another state's law.

This case involves sensitive issues of Michigan public policy regarding how best to encourage employers to deal effectively with employees who have substance abuse problems. (*See infra* Part IV.) The Michigan courts have carefully considered and weighed these public policy concerns and declared that employers in UGS' position have no duty to third persons like Plaintiffs. *See Millross v. Plum Hollow Golf Club,* 413 N.W.2d 17, 25 (Mich. 1987); *Premo v. Gen. Motors Corp.,* 533 N.W.2d 332, 333 (Mich. Ct. App. 1995). A Michigan court is best-

suited to confirm that Michigan law applies to this sensitive issue and then apply those precedents.

**B. Alternatively, the Court Should Transfer this Action to the Sherman Division of the Eastern District of Texas.**

Federal law also permits a court to transfer venue within a district "to any other division in the same district." 28 U.S.C. § 1404(b). Defendant's only employee even alleged to have a link to this lawsuit is located in Plano, Texas, which is within the Sherman Division of this judicial district. (Complaint ¶ 3.10.) If the Court finds that venue should remain in the Eastern District of Texas, Defendant requests that the Court transfer this action to the Sherman Division where UGS is headquartered in the interest of convenience. This transfer will not alter any burden on Plaintiffs or any other witnesses. UGS is aware of no evidence or witnesses within this division of this judicial district.

## IV. MOTION TO DISMISS

### ISSUES TO BE DECIDED:

(1) WHETHER MICHIGAN LAW APPLIES TO THIS WRONGFUL DEATH ACTION ACCRUING IN MICHIGAN;
(2) WHETHER PLAINTIFFS' CLAIMS AGAINST UGS ARE BARRED BY MICHIGAN LAW;
(3) WHETHER PLAINTIFFS' CLAIMS AGAINST UGS ARE BARRED BY TEXAS LAW.

**A. Michigan Law Applies to this Wrongful Death Tort Case.**

As a federal court exercising diversity jurisdiction, this Court applies the choice of law rules of Texas. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Unless a statute dictates otherwise, Texas choice of law rules require the Court to analyze which jurisdiction has the "most significant relationship" to the issue to be decided as detailed in

the Restatement (Second) of Conflicts of Laws.[3]  *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); *see also Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (applying the analysis in a tort case).

In tort cases, Texas choice of law analysis considers specific contacts to determine which state has the most significant relationship to the issue, including: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; and (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).  Additionally, the Restatement (Second) of Conflicts of Laws suggests that in cases of wrongful death, the law of the place of injury presumptively applies to the action.  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 175 ("In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . . ."); *see also Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 878 (E.D. Tex. 2002) (citing § 175 with approval); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex. Civ. App. – Corpus Christi 1990, writ denied) (same).  Finally, the Court must consider not only the number of contacts, but the quality of the contacts.  *See Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979).

Here, both the overwhelming quantity and quality of contacts between Michigan and the liability issues in this case dictate that Michigan law applies.  There is no dispute that the accident and deaths occurred in Michigan (Ring Aff. ¶ 2 & Ex. B at pp. 35-37, 39-43, 56-57), for

---

[3] Although Texas Civil Practice and Remedies Code Section 71.031 appears to govern choice of law in personal injury or wrongful death actions, that statute now requires the Court to apply the most significant relationship test. TEX. CIV. PRAC. & REM. CODE § 71.031(c); *Total Oilfield Services, Inc. v. Garcia*, 711 S.W.2d 237, 239 (Tex. 1986) (per curiam) (approving application of most significant relationship test to wrongful death actions); *see also Gutierrez v. Collins*, 583 S.W.2d 312, 317-18 n.3 (Tex. 1979).

which Wellinger was arrested, charged, tried and convicted in Michigan. (Ring Aff. ¶ 2 & Ex. B at pp. 63-71.) Wellinger worked at UGS' Livonia, Michigan office and was supervised by Ed Arlin in Michigan.[4] (Sanderson Decl. ¶¶ 2-4.) Only Michigan UGS employees saw or spoke to Wellinger on the day of the collision. (Ring Aff. ¶¶ 1-2 & Ex. A at pp. 1-24, Ex. B at pp. 45-55.) Plaintiff Weinstein admits that he is domiciled in and is a resident of Michigan. (Complaint ¶ 1.1.) He also sues as representative of the estates of Judith, Alexander and Samuel Weinstein, all of whom were residents of Michigan. (*See* Complaint; Ring Aff. ¶ 3 & Ex. C.) Plaintiff Weinstein has also begun probate proceedings for all three estates in Michigan. (Ring Aff. ¶ 3 & Ex. C.) While Defendant UGS is a Delaware corporation with its principal place of business in Texas, it conducts ongoing business in Michigan. (Complaint 1.2; *see generally* Sanderson Decl.) These numerous and substantial contacts show that Michigan has a far greater relationship to this action than any other state and that Michigan law should apply.

**B. Under Michigan Law, Plaintiffs Cannot State a Claim.**

Under Michigan law, Plaintiffs cannot state a claim for which relief may be granted. Michigan courts have carefully considered the competing policies and determined that no cause of action exists under the facts in Plaintiffs' Complaint. If a fact finder were to conclude that Wellinger drank at work, was visibly intoxicated at work and was directed to leave work by UGS management on the day of the accident (Complaint ¶ 3.12) – facts UGS would vigorously dispute at trial – such facts would not state a claim under Michigan law. Plaintiffs' claims that UGS negligently controlled, retained and supervised an alcoholic employee (Complaint ¶¶ 4.1-4.6) are similarly barred by Michigan law.

---

[4] Plaintiffs' only allegation of any connection to Texas about UGS' CEO (*see* Part II at ¶ 5, *supra*) is overwhelmed by the weight of the clear contacts between this action and Michigan.

The Michigan Supreme Court declared in *Millross v. Plum Hollow Golf Club* that employers have no duty to third parties under facts similar to those alleged by Plaintiffs. 413 N.W.2d 17, 25 (Mich. 1987). In *Millross*, Plum Hollow Golf Club ("Plum Hollow") served its employee Daniel Tomachowski ("Tomachowski") alcohol at a dinner that Plum Hollow required him to attend. *Id.* at 19. While driving home intoxicated from this work function, Tomachowski struck and killed James Millross. *Id.* at 19. In addition to claims under Michigan's dram shop laws, which were also dismissed, the *Millross* Plaintiffs alleged improper supervision and a negligent failure to prevent intoxication of its employee. *Id.* at 24. In affirming the trial court's dismissal of all of Plaintiff's claims, the court held that employers have no duty to prevent employees from injuring third parties off the employer's premises. *Id.* at 25.

Similarly, in *Premo v. General Motors Corporation* the Michigan Court of Appeals held that an employer has no duty to third persons injured by an intoxicated employee – even when the employee allegedly became intoxicated at work. 533 N.W.2d 332, 333 (Mich. Ct. App. 1995). Plaintiffs alleged that Eugene Kukowski ("Kukowski"), an employee of Defendant General Motors ("GM"), was scheduled to work from 4 p.m. until midnight on June 8, 1991. *Id.* at 332. Kukowski allegedly left work at 11 p.m., drank at a bar, and struck Plaintiff Linda Premo while driving home from the bar. *Id.* Plaintiffs also claimed that Kukowski drank both before and during work and that GM violated its own internal policy "of not allowing employees to leave the plant in their automobiles while intoxicated, but instead detaining them and arranging alternative transportation to their homes." *Id.*

Under the facts of *Premo*, the Michigan Court of Appeals held that GM had not assumed a duty to Plaintiff:

> Plaintiffs acknowledge the holding of *Millross*, but contend that they nevertheless have stated a claim based on the principle that one who voluntarily assumes a duty has an obligation to exercise some degree of care and skill in the

performance of what he has undertaken. Plaintiffs' reliance on this principle is misplaced. Defendant's internal policy of preventing intoxicated employees from driving did not, as a matter of public policy, amount to General Motors' assumption of a duty to protect the public at large. The trial court's opinion aptly states the public policy reasons militating against imposing a duty under these facts.

> Significant and compelling public policy reasons support a conclusion of an insufficient "undertaking" in this case. Alcohol and substance abuse is a serious societal problem causing significant human suffering and economic loss. In the work setting alcohol use and related problems undoubtedly cost employers and the national economy hundreds of millions, if not billions, of dollars each year in lost work time, efficiency, product quality, health and medical costs, workers' compensation, etc. To impose liability upon an employer who, by means of work rules, policies, etc. undertakes to address the problem of alcohol use and/or abuse is clearly against public policy and would encourage employers to abandon all efforts which could benefit such employees in order to avoid future liability.

*Id.* at 333 (internal citations omitted). In conclusion, the court held that the "relationship between defendant and [Plaintiff] was too remote to obligate defendant to protect her." *Id.* The Michigan courts have balanced the public policy concerns and decided that employers like UGS have no duty to third parties like Plaintiffs. Accordingly, Plaintiffs' claims must be dismissed.

Plaintiffs cannot circumvent these opinions by attempting to impute Wellinger's negligence to UGS, because such a result would clearly conflict with their holdings as set out above. Furthermore, Plaintiffs are barred by Michigan vicarious responsibility law. Plaintiffs acknowledge that Wellinger had left work and was driving to a personal appointment. (Complaint ¶ 3.11.) Michigan courts long have followed the rule that negligence of an employee operating his vehicle in transit to or from the workplace does not constitute an act committed within the scope of his employment, which could subject his employer to vicarious liability for an accident. *Vitaioli v Berklund*, 295 N.W. 557 (Mich. 1941); *see also Bajdek v Toren*, 169 N.W.2d 306 (Mich. 1969). Finally, Michigan law is clear that "the master is under no peculiar

duty to control the conduct of his servant while he is outside the master's premises, unless the servant is at the time using a chattel entrusted to him as a servant." *Millross v. Plum Hollow Golf Club*, 413 N.W.2d 17, 24 (Mich. 1987) (quoting RESTATEMENT (SECOND) OF TORTS § 317, comment b and citing *Meany v. Newell*, 367 N.W.2d 472 (Minn. 1985)). As Plaintiffs acknowledge, Wellinger drove his own personal vehicle at the time of the collision. (*See* Complaint ¶ 3.2.) Thus, UGS cannot be held liable for Wellinger's acts. Plaintiffs' claims must be dismissed for failure to state a claim upon which relief may be granted.

## C. Alternatively, Plaintiffs Do Not State a Claim under Texas Law.

Even if the Court were to apply Texas law, Plaintiffs' complaint must be dismissed. Plaintiffs have no viable claim that UGS negligently controlled Wellinger under Texas law. The general rule under Texas law is that "one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (quoting *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993)). In narrow circumstances, if an employer affirmatively exercises control over a severely incapacitated employee, and exercises such control precisely because the employer has actual knowledge of the severe incapacity, the employer *may* be held liable for substantially contemporaneous harm to a third person. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex. 1983). This limited duty has never been applied beyond the specific facts of the *Otis* case; indeed, courts around the state have narrowed, distinguished and limited its application.[5]

The most recent Texas Supreme Court case to consider the duty in *Otis* concluded that it was inapplicable, even under more egregious facts than those implicated here or in *Otis*. In

---

[5] Justice William Kilgarlin, the author of the narrow 5-4 majority opinion in *Otis*, has even stated: "Because the duty will vary depending on specific facts, it may be correct that, to a large extent, *Otis* is limited to its facts." William J. Kilgarlin & Sandra Sterba-Boatwright, *The Recent Evolution of Duty in Texas*, 28 S. TEX. L. REV. 241, 273 (1986).

*Loram Maint. of Way, Inc. v. Ianni*, the employee, Roger Tingle ("Tingle"), worked for a railway maintenance company that required its employees to work long hours and constantly be on the road. 210 S.W.3d 593, 595 (Tex. 2006). Tingle and several of his co-workers and supervisors openly used methamphetamine at work over the course of approximately ten months. *Id.* Tingle's supervisor even allowed Tingle to leave work to purchase methamphetamine. *Id.* For weeks, Tingle was seen using methamphetamine at work and due to this heavy drug use became moody and unstable. *Id.* Tingle even threatened one of his wife's friends with a knife. *Id.* All of these events were reported to and known by the employer's management. *Id.*

On the day of the incident, while still at work, Tingle repeatedly spoke of attacking his wife. *Id.* At the end of the shift, Tingle and his co-workers were driven back to the motel where the employer housed the workers and their families. *Id.* Later that day, Tingle attacked his wife and when a nearby police officer intervened, Tingle shot the officer. *Id.* The officer sued the employer for negligently retaining and controlling Tingle. *Id.* On appeal, the Texas Supreme Court held that the employer owed no duty to the officer. *Id.* at 597. Even though the court assumed that Tingle's supervisor was aware of his condition and such awareness was binding on the employer, the Court refused to impose a duty on the employer. *Id.* at 597 n.4. The Court emphasized that the shooting happened at least an hour after Tingle was off duty at the motel. *Id.* at 597. Because the employer was not "exercising any control over Tingle *at that time because of his agitated mental state*" the employer had not assumed any duty – even though the employer undoubtedly knew of Tingle's impaired condition. *Id.* at 597 (emphasis added); *see also Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990) (mere knowledge is insufficient to impose liability on the employer).

Other courts around the state have also distinguished *Otis* and limited it to its narrow fact situation. For example, in *Duge v. Union Pacific Railroad Co.*, Marcelino Garcia ("Garcia"), an

employee of Union Pacific, worked approximately 27 hours straight at the site of a train derailment. 71 S.W.3d 358, 359 (Tex. App. – Corpus Christi 2001, pet. denied). After this long stretch of work, Garcia's Union Pacific supervisor drove Garcia to his personal vehicle at the Union Pacific office. *Id.* After leaving the Union Pacific office, Garcia filled up with gas and visited with a friend at the gas station. *Id.* As Garcia was driving home, he struck and killed the Plaintiff's wife and son. *Id.* In refusing to impose a duty on the employer, the court was persuaded by the fact that "Garcia's condition, when taken to his truck, was very different from that of the *Otis* employee who was so intoxicated that he could not sit up straight." *Id.* at 362. Additionally, the court held that *Otis* only applied "where the employee was sent home because he was too intoxicated to work." *Id.* at 363.

Similarly, in *Jenkins v. Kemlon Products & Development Co.*, Gerald Holifield ("Holifield"), the employee, had worked long hours over the course of several weeks prior to the accident with a ninety minute commute to work each day. 923 S.W.2d 224, 225 (Tex. App. – Houston [14th Dist.] 1996, no pet.). After leaving work, Holifield drank beer at a bar and struck the Plaintiff while on the way home. *Id.* The court refused to impose a duty because "[t]he accident between Holifield and [Plaintiff] occurred six hours after he left work, during which time he consumed at least two beers. Thus, even if Holifield had been incapacitated from his half-day at work, the lapse of six hours attenuated any control [the employer] might have had over him." *Id.* at 226. Furthermore, Holifield's incapacity did "not rise to the level of incapacity described in *Otis*. The employee in *Otis* was 'in an extreme state of intoxication . . . [that was] known to his supervisor and fellow workers.'" *Id.* (citing *Otis* 668 S.W.2d at 308).

Finally, in *Andrews v. United States*, David Macomber ("Macomber"), a National Guardsman, was on duty all weekend at the Denison Armory. No. 4:05-CV-419, 2007 U.S. Dist. LEXIS 33321, at *3-4 (E.D. Tex. May 7, 2007). Macomber worked all day on Saturday, went

on an all-night recovery mission Saturday night and worked all day Sunday until dismissed. *Id.* Shortly after dismissal, while Macomber was driving home he struck and killed Plaintiff's father and son. *Id.* at 4-5. National Guard policies required officers to ensure that service members were afforded adequate time to sleep and Macomber's immediate supervisor was aware of Macomber's lack of sleep. *Id.* at * 3-5. However, no one enforced this policy as to Macomber. *Id.* at *6. Even though the court acknowledged that a policy existed, and that the supervisor may have known of Macomber's incapacity, it refused to impose a duty. *Id.* at *5-6; *18-19. Plaintiffs cannot state a claim based on that limited holding.

The duty in *Otis* is narrow and rarely, if ever, applied. Plaintiffs allege – UGS contends, inaccurately – that Wellinger's supervisor "directed him to see a psychiatrist that afternoon . . . ." (Complaint ¶ 3.9.) Even though Plaintiffs claim Wellinger was "obviously intoxicated" during the workday (see Complaint ¶ 3.12), Plaintiffs do not and cannot allege the following essential facts to recover: (1) that UGS subjectively recognized Wellinger's intoxication, (2) that such intoxication was so severe that UGS found Wellinger incapable of continuing to work, (3) that UGS personnel escorted Wellinger out of the building because Wellinger was too intoxicated to continue working, (4) that UGS exerted control over Wellinger contemporaneously with the harm he caused, and (5) that no appreciable intervening alcohol consumption or other delay came between UGS' control and the harm Wellinger caused. Plaintiffs' claims do not come within the narrow ambit of *Otis* and are barred.

Plaintiffs' claims that UGS is vicariously liable for Wellinger's tort must also be dismissed. As in Michigan, an employee who is operating his own personal vehicle to drive to or from work is not within the course and scope of employment; thus, the employer is not vicariously liable for the torts of its employee. *See Moreland v. Leslie*, 166 S.W.2d 902 (Tex. 1942); *London v. Texas Power & Light Co.*, 620 S.W.2d 718 (Tex. Civ. App. – Dallas 1981, no

writ); *Parmlee v. Texas & New Orleans R.R. Co.*, 381 S.W.2d 90 (Tex. Civ. App. – Tyler 1964, writ ref'd n.r.e.); *Glasgow v. Floors, Inc.*, 356 S.W.2d 699 (Tex. Civ. App. – Dallas 1962, no writ). Furthermore, when an employee leaves the employer's premises to proceed home – even at the employer's direction – the employee is not in the course of his employment. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 308 (Tex. 1983).

## V. MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY

Subject to and without waiving the arguments in its Motion to Dismiss that Michigan law applies, UGS moves to designate Thomas Wellinger, the primary tortfeasor, as a responsible third party pursuant to Texas law. TEX. CIV. PRAC. & REM. CODE § 33.004. As already described more fully above, Wellinger negligently struck and killed Plaintiffs' decedents on the afternoon of May 3, 2005, in Farmington Hills, Michigan. (Complaint ¶¶ 3.1-3.2 & 3.4; Ring Aff. ¶¶ 1-2 & Ex. A at pp. 7, 11, 13, Ex. B at pp. 32-33, 35-36, 39-43, 56.) The local police investigated the matter (Ring Aff. ¶ 1-2 & Exs. A & B) and local prosecutors charged Wellington with second degree murder (Ring Aff. ¶ 4 & Ex. D at 69-71). A Michigan criminal court found Wellinger guilty and sentenced him to nineteen years in prison. (Ring Aff. ¶ 4 & Ex. D at 66-68.) Because this is a cause of action based in tort and Wellinger is a "person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligence act or omission," Wellinger is properly designated as a responsible third party. TEX. CIV. PRAC. & REM. CODE §§ 33.002(a)(1); 30.011(6). Accordingly, the Court should designate Wellinger as a responsible third party.

## VI. CONCLUSION

This personal injury action involves Michigan parties, a responsible third party, party and non-party witnesses and evidence, all of which are more conveniently accessed over 1000 miles

away in Michigan. The overwhelming number of contacts between the state of Michigan and this tort action focused on a tragic collision in Michigan clearly outweighs any tenuous connection to Texas, much less its substantive tort law. Therefore, Defendant UGS Corp. respectfully requests that the Court grant the relief UGS seeks and transfer this action to the Eastern District of Michigan or alternatively, to the Sherman Division of this district. In the alternative, UGS respectfully requests that the Court apply Michigan law and dismiss this action in its entirety or alternatively, dismiss this action under Texas law. Finally, UGS respectfully requests that if the Court applies Texas law and does not dismiss, that the Court designate Thomas Wellinger as a responsible third party pursuant to Texas law.

Respectfully submitted,

David S. Coale
  State Bar No. 00787255
  Lead Attorney
Eric Porterfield
  State Bar No. 24047396
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333
Email: *dcoale@ccsb.com*;
*eporterfield@ccsb.com*

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause via ECF in accordance with Rule 5, Federal Rules of Civil Procedure, on this 12th day of June, 2007.

_____
Eric Porterfield

## CERTIFICATE OF CONFERENCE

On June 12, 2007, the undersigned attempted to confer via phone with Francisco Guerra or Mikal Watts of the Watts Law Firm, L.L.P, attorneys for Plaintiffs, and was advised that Mr. Guerra was in trial and that Mr. Watts was unavailable. The undersigned also attempted to confer via e-mail with Francisco Guerra but has received no response. Thus, Defendant UGS submits these motions to the Court as opposed.

_____
Eric Porterfield

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| GARY WEINSTEIN, et. al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-173 (TJW) |
| | § | |
| UGS CORP, | § | |
| Defendant. | § | Case: 2:07-cv-15000 |
| | § | Judge: Edmunds, Nancy G |
| | § | Referral MJ: Whalen, R. Steven |
| | § | Filed: 11-26-2007 At 09:47 AM |
| | | TRANS WEINSTEIN V. UGS CORP (DA) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant UGS Corp.'s ("UGS") Motion to Transfer Venue, Rule

12(b)(6) Motion to Dismiss, and Motion for Leave to Designate a Responsible Third Party (#7).

After considering the filings of the parties and the applicable law, the Court GRANTS Defendant's

motion to transfer venue for the reasons expressed below, but does not rule on the motion to dismiss

or the motion for leave to designate a responsible third party.

**I.     Factual Background**

Plaintiff Gary Weinstein ("Mr. Weinstein") filed claims against UGS individually and as a

representative of the estates of Judith Weinstein, Alexander Weinstein, and Samuel Weinstein.  Mr.

Weinstein has been a citizen and resident of Michigan at all relevant times in this litigation.  UGS

is a Delaware corporation with its principal place of business in Plano, Texas.

There is no disagreement between the parties that, while employed by UGS in Michigan,

Thomas Wellinger ("Mr. Wellinger") struck and killed Judith, Alexander, and Samuel Weinstein

while driving under the influence of alcohol after leaving UGS's offices in Livonia, Michigan.  Mr.

Wellinger was tried and convicted of second degree murder and was sentenced to nineteen years in

A TRUE COPY I CERTIFY
DAVID MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT, TEXAS
By: _____

prison in the Michigan Department of Corrections, where he currently resides. Mr. Weinstein alleges that UGS is liable both vicariously and independently for Mr. Wellinger's negligence.

There has been a significant amount of litigation related to this accident. Mr. Wellinger's insurer filed suit against him in Oakland County Michigan claiming that his automobile insurance lapsed by the time of the accident. In that lawsuit, several of UGS's employees were subpoenaed and noticed for deposition. The witness lists in that litigation included multiple individuals located in Michigan, including UGS employees. Mr. Wellinger's employment records and their relation to Mr. Wellinger's job performance and mental state before the collision were at issue in another Oakland County lawsuit.

Probate proceedings are currently pending in the Oakland County Probate Court. Previously, Mr. Weinstein settled wrongful death claims against other defendants. The Oakland Country Probate Court had to approve that settlement just as it must approve this settlement. The vast majority of likely witnesses in this litigation are located in Michigan. Substantially all of the events that give rise to this lawsuit occurred in Michigan.

## II.    Discussion

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." 28 U.S.C. § 1404(a) (2004). It is within the district court's sound discretion whether to transfer venue under section 1404(a). *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). When considering whether to transfer venue, the district court "must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)

2

(stating that district courts have the discretion to decide whether to transfer venue according to "individualized, case-by-case consideration of convenience and fairness").

When deciding whether to transfer venue, the court balances the following two categories of interests: "(1) the convenience of the litigants, and (2) the public interests in the fair and efficient administration of justice." *Hanby*, 144 F. Supp. 2d at 676. The convenience factors weighed by the district court are the following: (1) the plaintiff's choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed*, 90 F. Supp. 2d at 771. The court also balances the following public interest factors: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.* The moving party bears the burden of demonstrating that venue should be transferred to another forum. *Hanby*, 144 F. Supp. 2d at 676. To meet this burden, the moving party must show that "the balance of convenience and justice *substantially* weighs in favor of transfer." *Mohamed*, 90 F. Supp. 2d at 768.

A.   *Convenience Factors*

1. The plaintiffs' choice of forum

The plaintiffs' choice of forum is neither controlling nor determinative, but is still a factor to be considered. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). The plaintiff's choice of forum, however, will not be disturbed unless it is clearly outweighed by other factors. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002). The plaintiffs chose to bring

3

their suit in the Eastern District of Texas, Marshall Division. Therefore, this factor weighs against transfer.

### 2. The convenience of parties and material witnesses

Next, the court will assess the convenience of the parties. The convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake*, 233 F. Supp. 2d at 832. In this case, the plaintiff resides in Michigan. The defendant has offices throughout the country, including Michigan, although its principal place of business is in Texas. In fact, the employee through whom the plaintiff alleges that UGS is vicariously liable was employed in the Livonia, Michigan office. Most, if not all, of the likely UGS employees who will be witnesses in this case are located in Michigan. Accordingly, the convenience of the parties weighs in favor of transfer.

The court now considers the convenience of the witnesses. Courts routinely consider whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed*, 90 F. Supp. 2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake*, 233 F. Supp. 2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed*, 90 F. Supp. 2d at 775 (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

The plaintiff has not provided evidence that likely non-party witnesses for this case reside outside of Michigan. The defendant has provided affidavits notifying the court that "virtually every possible witness" for the accident is located in Michigan. Further, it seems that the vast majority, if not all, of the non-party fact witnesses reside in Michigan. For example, Mr. Wellinger is

4

incarcerated in Michigan. The investigating officers in the criminal investigation are located in Michigan as well as the Michigan State Police toxicologist who analyzed Mr. Wellinger's blood sample.

The evidence also shows that substantially all of the defendant's employees who are now known to have personal knowledge of the accident and related facts are located in Michigan. There are roughly twelve UGS employees who gave interviews to the authorities during the criminal investigation of Mr. Wellinger and those witnesses reside in Michigan. UGS employees residing in Michigan likely will testify to matters related not just to the accident itself, but to the knowledge that the defendant's employees had of Mr. Wellinger's alcohol abuse and the resulting actions of those employees. To that point, the plaintiff alleges in the complaint that Mr. Wellinger's supervisor, Mr. Ed Arlin, confronted Mr. Wellinger on the day of the accident to outline the plan that UGS had made concerning Mr. Wellinger's alcohol abuse. Allegedly, Mr. Arlin directed Mr. Wellinger to see a psychiatrist that afternoon and to report back to Mr. Arlin the psychiatrist's recommendations. This evidence is central to the plaintiff's direct liability claims and gross negligence claims because it addresses the remedial steps taken by UGS in response to Mr. Wellinger's alcohol abuse.

The plaintiff notes that "high level executives" of UGS are located in Texas and that those witnesses will likely testify by deposition rather than in-person at trial. But the plaintiff provided the court with no evidence that these witnesses have personal knowledge of relevant facts at issue in this case. Additionally, those "high level executives" are party witnesses for the party asking the court to transfer the case.

UGS has specifically identified a large number of key witnesses–both party and non-party

5

witnesses who reside in Michigan.  Transferring the case to the Eastern District of Michigan will be significantly more convenient for the vast majority, if not all, material witnesses in this case.  This factor heavily favors transfer.

### 3. The place of the alleged wrong

There are multiple events that could create liability for the defendant.  The plaintiff argues that its direct liability and gross negligence claims relate to decisions made in Texas by "high level executives."  This is the only "event" that could give rise to the defendant's liability that occurred in Texas.  However, the plaintiff provided no evidence to the court that this "event" occurred.

Another event that could give rise to the defendant's liability is the accident itself.  The accident occurred in Michigan.  Moreover, the defendant could be liable for its employees' actions in response to learning of Mr. Wellinger's alcohol abuse.

Finally, the plaintiff alleges that Mr. Wellinger was inebriated at work on the day of the accident. He also alleges that Mr. Wellinger met with Mr. Arlin on the day of the accident to discuss UGS's course of action related to Mr. Wellinger's alcohol abuse.  Additionally, the plaintiff alleges that Mr. Arlin asked two UGS employees to confront Mr. Wellinger concerning his alcohol abuse on another day.  All of these events can potentially create liability for the defendant.  Each of these events occurred in Michigan.

The incidents that could create liability for the defendant occurred in Michigan.  The plaintiff has not provided the court with any evidence of events occurring in Texas that could create liability for the defendant.  This factor weighs in favor of transfer.

### 4.  The cost of obtaining the attendance of witnesses and  the availability of compulsory process

6

The only potential witnesses for whom it is more convenient to attend trial in Marshall as opposed to the Eastern District of Michigan are the "high level executives." Plaintiff represented to the court that those witnesses would likely testify by deposition rather than in-person at trial. This factor favors transfer.

### 5. The accessibility and location of sources of proof

The court notes that this factor has become less significant in a transfer analysis because of the advances in copying technology and information storage. *Mohamed*, 90 F. Supp. 2d at 778. It is clear that the relevant documents and the sources of evidence are located in Michigan. However, documents and other- evidence can be transported to Marshall. In the court's view, this factor is neutral.

### 6. The possibility of delay and prejudice if transfer is granted

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake*, 233 F. Supp. 2d at 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002)). This case is not an exceptional case and, therefore, this factor is neutral.

B.   *Public Interest Factors*

### 1. The administrative difficulties caused by court congestion

Neither party is aware of any administrative difficulties flowing from the Eastern District of Michigan and not the Marshall Division of the Eastern District of Texas. Therefore, this factor is neutral as to transfer.

### 2. The local interest in adjudicating local disputes

The incident giving rise to this litigation has been extensively litigated in Michigan. It

7

also involves evidence arising from a criminal investigation performed by Michigan law enforcement personnel that resulted in a Michigan resident's conviction for second degree murder. There is a local interest in adjudicating this dispute. This factor strongly favors transfer.

### 3. The unfairness of burdening citizens in an unrelated forum with jury duty

Texas has little interest in adjudicating this matter, particularly compared to the residents of Michigan. Accordingly, the court finds that this factor strongly favors transfer.

### 4. The avoidance of unnecessary problems in conflict of laws

Michigan substantive law will likely apply to the majority of issues in this case. Potentially, there might be instances where Texas law is applied, but it seems likely that Michigan law will largely govern this case. This factor favors transfer.

## III.    Conclusion

Upon application of the section 1404(a) factors to this case, the Court has exercised its discretion and has concluded that transfer to Eastern District of Michigan is warranted. Accordingly, the Court GRANTS Defendant's Motion to Transfer Venue but defers ruling on Defendant's Rule 12(b)(6) Motion to Dismiss or Motion for Leave to Designate a Responsible Third Party to the transferee Court. This case is hereby transferred to the Eastern District of Michigan.

SIGNED this 22ndday of October, 2007.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

8

CLOSED, JURY

# U.S. District Court [LIVE]
## Eastern District of TEXAS LIVE (Marshall)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00173-TJW

Weinstein v. UGS Corporation
Assigned to: Judge T. John Ward
Cause: 28:1332 Diversity-Wrongful Death

Date Filed: 05/01/2007
Jury Demand: Plaintiff
Nature of Suit: 350 Motor Vehicle
Jurisdiction: Diversity

**Plaintiff**

**Gary Weinstein**
*Individually and as*
*Representative of the Estate of*
*Judith Weinstein, Alexander*
*Weinstein and Samuel Weinstein*

represented by **Mikal C Watts**
Watts Law Firm - San Antonio
300 Convent St
Ste 100, Bank of America Plaza
San Antonio, TX 78205
210/527-0500
Fax: 210/527-0501
Email:
mcwatts@wattslawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francisco Guerra, IV**
Watts Law Firm - San Antonio
300 Convent St
Ste 100, Bank of America Plaza
San Antonio, TX 78205
210/527-0500
Fax: 12105270501
Email:
fguerra@wattslawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UGS Corporation**

represented by **Eric Brian Porterfield**
Carrington Coleman Sloman &
Blumenthal LLP

A TRUE COPY I CERTIFY
DAVID MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT, TEXAS
By: _____

901 Main Street
Suite 5500
Dallas, TX 75202-3767
214/855-3000
Fax: 214/758-3703
Email: eporterfield@ccsb.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2007 | ❶1 | COMPLAINT with JURY DEMAND against UGS Corporation (Filing fee $ 350.) , filed by Gary Weinstein. (Attachments: # 1 Civil Cover Sheet)(ehs, ) (Entered: 05/01/2007) |
| 05/01/2007 | ❶ | E-GOV SEALED SUMMONS Issued as to UGS Corporation. (ehs, ) (Entered: 05/01/2007) |
| 05/01/2007 | ❶2 | Magistrate Consent Form Mailed to Gary Weinstein (ehs, ) (Entered: 05/01/2007) |
| 05/04/2007 | ❶ | Filing fee: $ 350.00, receipt number 2-1-2532 (ch, ) (Entered: 05/04/2007) |
| 05/25/2007 | ❶3 | MOTION for Extension of Time to File Answer re 1 Complaint by UGS Corporation. (Attachments: # 1 Text of Proposed Order)(Porterfield, Eric) (Entered: 05/25/2007) |
| 05/25/2007 | ❶4 | CORPORATE DISCLOSURE STATEMENT filed by UGS Corporation identifying Siemens, A.G. as Corporate Parent. (Porterfield, Eric) (Entered: 05/25/2007) |
| 06/04/2007 | ❶5 | E-GOV SEALED SUMMONS Returned Executed by Gary Weinstein. UGS Corporation served by CMRR on 5/16/2007, answer due 6/5/2007. (ch, ) (Entered: 06/04/2007) |
| 06/05/2007 | ❶6 | ORDER granting 3 Motion for Extension of Time to Answer . Signed by Judge T. John Ward on 6/5/07. (djh, ) (Entered: 06/05/2007) |
| 06/12/2007 | ❶7 | ***Modified to attached proposed orders*** MOTION to Change Venue, MOTION to Dismiss, MOTION *for Leave to Designate Responsible Third Party* by UGS Corporation. (Attachments: # 1 Affidavit of Marlene Ring and attached Exs. A, B & C# 2 Exhibit D attached to Ring Affidavit# 3 Declaration of Donna Sanderson)(Porterfield, Eric) Additional |

| | | attachment(s) added on 6/12/2007 (ehs, ). Modified on 6/12/2007 (ehs, ). (Entered: 06/12/2007) |
|---|---|---|
| 06/21/2007 | ◎8 | NOTICE of Attorney Appearance by Francisco Guerra, IV on behalf of Plaintiff Gary Weinstein (Guerra, Francisco) Modified on 6/21/2007 (mpv, ). (Entered: 06/21/2007) |
| 06/26/2007 | ◎9 | ***DOCKET ENTRY MODIFIED BY CLERK TO ADD CORRECTED PROPOSED ORDER, ORIGINAL ORDER DELETED AND REPLACED BY CORRECT ORDER*** <br><br> MOTION for Extension of Time to File Response/Reply as to 7 MOTION to Change Venue MOTION to Dismiss MOTION to Dismiss by Gary Weinstein. (Attachments: # 1 Text of Proposed Order Granting Unopposed Motion for Extension of Time to Respond to Motion to Transfer Venue, Rule 12(b)(6) Motion to Dismiss, and Motion for Leave to Designate Responsible Third Party and Brief in Support)(Guerra, Francisco) Corrected Proposed Order added on 6/27/2007 (mpv, ). Modified on 6/27/2007 (mpv, ). (Entered: 06/26/2007) |
| 06/27/2007 | ◎10 | ORDER granting 9 Motion for Extension of Time to File Response/Reply . Signed by Judge T. John Ward on 6/27/07. (ch, ) (Entered: 06/27/2007) |
| 07/05/2007 | ◎11 | NOTICE of Hearing: Scheduling Conference set for 8/7/2007 11:15 AM in Ctrm 106 (Marshall) before Judge T. John Ward. (shd, ) (Entered: 07/05/2007) |
| 07/06/2007 | ◎12 | Notice of Scheduling Conference, Proposed Deadlines for Docket Control Order and Discovery Order Scheduling Conference set for 8/7/2007 11:15 AM before Judge T. John Ward.. Signed by Judge T. John Ward on 7/5/07. (ch, ) (Entered: 07/06/2007) |
| 07/10/2007 | ◎13 | NOTICE of Attorney Appearance by Eric Brian Porterfield on behalf of UGS Corporation (Porterfield, Eric) (Entered: 07/10/2007) |
| 07/11/2007 | ◎14 | RESPONSE to Motion re 7 MOTION to Change Venue MOTION to Dismiss MOTION to Dismiss *filed by Gary Weinstein*. (Attachments: # 1 Exhibit A# 2 Text of Proposed Order Order Denying Motion to Transfer Venue# 3 Text of Proposed Order Order of Motion to Dismiss)(Guerra, Francisco) (Entered: 07/11/2007) |

| 07/20/2007 | ❶15 | REPLY to Response to Motion re 7 MOTION to Change Venue MOTION to Dismiss MOTION to Dismiss & *Motion for Leave to Designate Responsible Third Party filed by UGS Corporation.* (Porterfield, Eric) (Entered: 07/20/2007) |
|------------|------|---|
| 10/22/2007 | ❶16 | MEMORANDUM AND OPINION AND ORDER - Accordingly the court grants dfts Motion to Transfer Venue by defers ruling on Dft's Rule 12(b)(6) Motion to Dismiss or Motion for Leave to Designate a Responsible Third Party to the transferee court. This case is hereby transferred to the Eastern District of Michigan. Signed by Judge T. John Ward on 10/22/07. (ch, ) (Entered: 10/22/2007) |
| 11/13/2007 | ❶ | Interdistrict transfer to the Eastern District of Michigan. Certified copy of Transfer order, complaint and docket sheet sent to the ED/MI (ehs, ) (Entered: 11/13/2007) |

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET County in which this action arose _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
GARY WEINSTEIN ET AL

## DEFENDANTS
UGS CORP

(b)   County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)   Attorney's (Firm Name, Address, and Telephone Number)

Mikal C. Watts and/or Francisco Guerra @ Watts Law Firm, L. L. P
300 Convent , Ste 100 San Antonio, Texas 78205

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury – | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☒ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
_____
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.　　　Is this a case that has been previously dismissed?　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　Other than stated above, are there any pending or previously
　　　　discontinued or dismissed companion cases in this or any other　　☐ Yes
　　　　court, including state court? (Companion cases are matters in which　☒ No
　　　　it appears substantially similar evidence will be offered or the same
　　　　or related parties are present and the cases arise out of the same
　　　　transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :