UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as
Representative of the Estate of JUDITH
WEINSTEIN, as Representative of the Estate
of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL
WEINSTEIN,

                        Plaintiffs,                  Case No. 07-15000
                                                  Hon. Nancy G. Edmunds

v.

UGS CORP.,

                        Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

      Defendant UGS Corp. ("UGS"), by its attorneys Honigman Miller Schwartz and

Cohn LLP, moves pursuant to FRCP 12(b)(6) to dismiss plaintiff's complaint, originally

filed in the Eastern District of Texas and transferred here because of a lack of Texas

contacts, and because all of the parties reside, and all of the events described occurred in

this district, for the following reasons:

      1.     The complaint alleges that UGS is liable for the deaths of plaintiff's

decedents, who were killed by a drunk driver employed by UGS, after the employee, who

allegedly was drinking at work, left UGS's office to attend a personal medical

appointment.

      2.     Michigan appellate courts, including the Supreme Court, have long and

consistently held that an employer has no duty to prevent injury to third persons away

from the employer's premises caused by an intoxicated employee.  This is so even in

cases where the employer supplied alcohol to the employee, or where the employer

directed a visibly intoxicated employee to leave work.  The Courts have held that it would be against public policy to impose such a duty on employers to third parties, even if an employer assumed to aid the impaired employee, but did so negligently.  Any such rule would discourage employers from voluntarily acting to help impaired employees. Michigan's rule is consistent, moreover, with the majority of jurisdictions.

WHEREFORE, UGS asks that plaintiff's complaint be dismissed with prejudice, and that it be awarded its costs and reasonable attorney fees.

Respectfully submitted,

/s/ Herschel P. Fink   (P13427)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendant UGS
2290 First National Building
Detroit, MI  48226
(313) 465-7400
hfink@honigman.com

Dated: November 29, 2007

DETROIT.2769373.1

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as
Representative of the Estate of JUDITH
WEINSTEIN, as Representative of the Estate
of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL
WEINSTEIN,

                Plaintiffs,

v.

UGS CORP.,

                Defendant.

_____/

Case No. 07-15000
Hon. Nancy G. Edmunds

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS

Herschel P. Fink (P13427)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendant UGS
2290 First National Building
Detroit, MI   48226
(313) 465-7400
hfink@honigman.com

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ...........................................................................................ii-iv

INTRODUCTION .............................................................................................................. 1

PERTINENT FACTS........................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

  A.  Summary of Argument ...........................................................................3

  B.  Standard Under Rule 12(b)(6) .................................................................3

  C.  Michigan Law Clearly Applies to Plaintiff's
    Wrongful Death Action.............................................................................5

  D.  An Employer Has No Duty to Prevent Injury
    Away From the Employer's Premises Caused
    by an Intoxicated Employee.....................................................................6

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

CASES

*Bajdek v Toren*,
  169 NW2d 306 (Mich. 1969)..................................................................................................14

*Barney v PV Holding Corp.*,
  218 Mich App 167 (1996)......................................................................................................6

*Bauer v. United States*,
  882 F. Supp. 516 (D.S.C. 1995)............................................................................................13

*Benedict v GMC*,
  1997 U. S. Dist. LEXIS 9230 (W.D. Mich 1997)....................................................................10

*Braun v. York Props.*,
  230 Mich. App. 138 (1998)....................................................................................................13

*Buczkowski v. McKay*,
  441 Mich. 96 (1992) ..............................................................................................................13

*Car Carriers, Inc. v Ford Motor Co.*,
  745 F2d 1101 (7th Cir. 1984) ................................................................................................5

*Clark v Dalman*,
  379 Mich 251; 150 NW2d 755 (1967)....................................................................................10

*Congini v. Portersville Valve Co.*,
  504 Pa. 157 (1983)................................................................................................................13

*Conley v Gibson*,
  355 US 41, 78 S.Ct. 99, 2 Led 80 (1957)................................................................................5

*Crow v. Cal.*,
  222 Cal. App. 3d 192 (Cal. Ct. App. 1990) ...........................................................................13

*Dura Pharms, Inc. v Broudo*,
  125 S.Ct. 1627 (2005)............................................................................................................4

*Hanakahi v. United States*,
  325 F. Supp. 2d 1125 (D. Haw. 2002) ..................................................................................12

*Holliman v. United States*,
  22 F. Supp. 2d 1111 (D. Ariz. 1998) .....................................................................................13

*In re DeLorean Motor Co.,*
   991 F.2d 1236 (6th Cir. 1993) .......................................................................................5

*In re Plywood Antitrust Litigation,*
   655 F2d 627 (5th Cir. 1981) ..........................................................................................5

*Johnston v. KFC Nat'l Management Co.,*
   71 Haw. 229, 788 P.2d 159 (1990) ..............................................................................12

*Killian v Caza Drilling, Inc.,*
   131 P. 3d 975 (Wyo 2006) ...........................................................................................11

*Lawler v Marshall,*
   898 F2d 1196, 1199 (6th Cir. 1990) ..............................................................................4

*Meador v Cabinet for Human Resources,*
   902 F2d 474 (6th Cir.) (1990) .......................................................................................4

*Meany v Newell,*
   367 NW2d 472 (Minn. 1985) ......................................................................................14

*Meyers v. Grubaugh,*
   242 Kan. 716, 750 P.2d 1031 (1988) ...........................................................................13

*Millross v Plum Hollow Golf Club,*
   429 Mich 178 (1987) ....................................................................................................7

*Mitchell v Archibald & Kendall, Inc.,*
   573 F.2d 429 (7th Cir. 1978) ........................................................................................5

*Mosko v. Raytheon Co.,*
   416 Mass. 395, 622 N.E.2d 1066 (1993) .....................................................................12

*Olmstead v Andersen,*
   428 Mich 1 (1987) .......................................................................................................61

*Pierron v GMC,*
   No. 201374, 1994 LEXIS 1893, 1-2 (Mich App 1998) ...............................................10

*Premo v General Motors,*
   210 Mich App 121 (1995).....................................................................................*Passim*

*Prugue v. Monley,*
   29 Kan. App. 2d 635, 28 P.3d 1046 (2001) .................................................................13

*Riddle v. Arizona Oncology Serv., Inc.,*
   186 Ariz. 464, 924 P.2d 468 (Ariz. Ct. App. 1996)....................................................13

iii

*Romeo v Van Otterloo,*
  117 Mich App 333 (1982)................................................................................................5

*Sexton v Barry,*
  233 F.2d 220 (6th Cir. 1956) ........................................................................................5

*Scheid v Fanny Farmer Candy Shops, Inc.,*
  859 F2d 434 (6th Cir. 1988) .........................................................................................5

*Terry v. Stumpf Motor Co.,*
  142 Wis. 2d 937 (Wis. Ct. App. 1987) ........................................................................13

*Tidik v Ritsema,*
  938 F.Supp 416 (E.D. Mich. 1996)................................................................................4

*Vitaioli v Berklund,*
  295 N.W. 557 (Mich. 1941)..........................................................................................14

*Weiner v Klais & Co.,*
  108 F.3d 86 (6th Cir. 1997) ..........................................................................................4

*Western Mining Council v Watt,*
  643 F.2d 618 (9th Cir. 1980) .........................................................................................5

**OTHER AUTHORITIES**

FRCP 12(b)(6) .....................................................................................................................3

Restatement (Second) of Conflict of Laws §175............................................................6

## Introduction

This action began with an unsuccessful Texas forum shopping foray by plaintiff, hoping to avoid clear, established Michigan law, which mandates dismissal of this wrongful death claim.  An employer in Michigan simply has no duty to prevent injury to third persons occurring away from an employer's premises, caused by an intoxicated employee.

The Eastern District of Texas, where plaintiff filed his complaint, rejected that attempt, and transferred this action to the Eastern District of Michigan, where all of the parties reside, or can be found; where applicable Michigan law can more easily be applied, and where all of the events described in the complaint occurred.  (A copy of District Judge T. John Ward's October 22, 2007 memorandum opinion and order is attached as Exhibit A for the Court's convenience.)

Applicable Michigan law, clearly and unequivocally, requires dismissal, even under the fabricated facts alleged in the complaint.[1]

---

[1] For purposes of this dismissal motion only, UGS must accept the facts alleged in the complaint as true.  UGS notes, however, that, were this action to survive this motion to dismiss, UGS would sharply dispute the alleged facts, which were designed to survive a Texas motion to dismiss and to fit within a specific Texas decision, which itself has subsequently been limited by Texas Courts.  In short, there is nothing in the ample criminal case record already compiled by Farmington Hills and Michigan State Police and Oakland County prosecutors to support the naked allegation that Mr. Wellinger was visibly intoxicated at work on the day of the accident.  Moreover, there was at least a one hour gap between when Mr. Wellinger voluntarily left his office for a pre-scheduled doctor's appointment and when the accident occurred.  Three of Mr. Wellinger's co-workers gave statements to Farmington Hills Police that they witnessed him exit the building and drive off, and that he gave no indication of being intoxicated.  He was never ordered to leave work for a psychiatrist appointment, but, rather, had a longstanding appointment with his treating psychiatrist.  Surveillance video at the office building also showed Mr. Wellinger walking to his car and driving out of the parking lot, all without any visible sign of intoxication.  Mr. Wellinger, in a post-sentencing transcribed

**Pertinent Facts**

The Court likely remembers the highly publicized, tragic accident on May 3, 2005 in which Thomas Wellinger, while driving his SUV on Twelve Mile Road in the City of Farmington Hills, struck the rear of a vehicle driven by Judith Weinstein and in which her two children, Alexander and Samuel, were passengers, killing all three.  Mr. Wellinger was intoxicated at the time.  He was charged with second degree murder, pled no contest in Oakland County Circuit Court, and was sentenced to 19 to 30 years in prison by Oakland Circuit Judge Rudy Nichols.

Plaintiff's complaint alleges that UGS, Mr. Wellinger's employer in Livonia, Michigan, was aware that Mr. Wellinger had a "serious drinking problem," and that in January, 2005 UGS "enrolled Mr. Wellinger in an abbreviated 5-day rehabilitation program." (Complaint ¶3.7)  When he returned, he "continued to exhibit signs of alcohol abuse." (¶3.8)  It goes on to claim that on May 3, 2005, the day of the accident, Mr. Wellinger was confronted by his "superior" "with his continued job performance problems" and, "as a condition of continuing Mr. Wellinger's employment" he was "directed. . . to see a psychiatrist that afternoon," and to "report back" on the psychiatrist's "recommendation for treating Mr. Wellinger's alcohol problems." (¶3.9)

The complaint further alleges that Mr. Wellinger left the UGS Livonia office at 2:30 p.m. on May 3, 2005 (¶3.11), one hour before the fatal crash at 3:30 p.m. in Farmington Hills. (¶3.1).

---

statement made to plaintiff's attorney at the Oakland County Jail, testified that he never drank at work, including on the day of the accident.  Police theorize he may have gone home after leaving work, drank, and then started out for his doctor appointment.

In the penultimate allegation, the complaint claims, without reference to any supporting facts, that Wellinger "had been drinking at his office on the day of the accident and was obviously intoxicated during his meetings with upper management that day before he was directed to attend an appointment with his psychiatrist that afternoon." (¶3.12).

(Were this not a dismissal motion brought under FRCP 12(b)(6), UGS would dispute every allegation.)

## ARGUMENT

### A.    Summary of Argument

Michigan appellate courts, including the Supreme Court, have long and consistently held that an employer has no duty to prevent injury to third persons away from the employer's premises caused by an intoxicated employee.  This is so even in cases where the employer supplied alcohol to the employee, or where the employer directed a visibly intoxicated employee to leave work.  The Courts have held that it would be against public policy to impose such a duty on employers to third parties, even if an employer assumed to aid the impaired employee, but did so negligently.  Any such rule would discourage employers from voluntarily acting to help impaired employees. Michigan's rule is consistent, moreover, with the majority of jurisdictions.

### B.    Standard Under Rule 12(b)(6)

Federal Rule of Civil Procedures 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted."  "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true.  Under this standard, a complaint

should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tidik v Ritsema*, 938 F.Supp 416, 421 (E.D. Mich. 1996) (Gadola, J.).   The Sixth Circuit has made it clear that "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).   The United States Supreme Court recently reiterated this principle, holding that a complaint that fails to allege facts supporting basic elements like loss and loss causation fails to satisfy Federal Rule of Civil Procedure 8. *Dura Pharms, Inc. v Broudo*, 125 S.Ct. 1627, 1629 (2005).   When faced with a FED. R. CIV. P. 12(b)(6) motion to dismiss, a district court:

> …must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Lawler v Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting *Conley v Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed. 80 (1957)). A judge may not grant a FED R.CIV.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "In practice, 'a…complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Car Carriers, Inc. v Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984), *cert denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

4

*In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  However, the court does not give the presumption of truthfulness to any legal conclusions, opinions, or deductions, even if they are couched as factual allegations.  *Sexton v Barry*, 233 F.2d 220, 223 (6th Cir. 1956); *Tidik*, 938 F.Supp. at 421; *Western Mining Council v Watt*, 643 F.2d 618, 629 (9th Cir. 1980); *Mitchell v Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978).  Accordingly, to determine whether a complaint should be dismissed for failure to state a claim under Rule 12(b)(6), this Court must examine the applicable substantive law and the facts alleged in the plaintiff's complaint.

### C. Michigan Law Clearly Applies to Plaintiff's Wrongful Death Action

Plaintiff's wrongful death complaint, initially filed in the Eastern District of Texas, disingenuously neglected to mention that the subject accident occurred in Farmington Hills, Michigan, and that the deceased individuals at all times were Michigan residents, whose estates are being probated in Oakland County, Michigan; that the accident was caused by Thomas Wellinger, a Michigan resident who was sentenced by a Michigan court and is imprisoned in a Michigan prison.

Of course, those facts are not disputed by plaintiff, nor could they be.  The single "connection" to the State of Texas alleged in the complaint is the improbable claim that "decisions regarding how to handle Mr. Wellinger and his problem with becoming drunk during his working hours at UGS," where he worked at the company's Livonia, Michigan office, "were made, ratified, and/or approved by personnel in UGS's corporate headquarters, in Texas." (Complaint ¶3.10.)

No conflict of laws principle would even arguably suggest that Texas law should apply to this Michigan wrongful death action, which arose in Michigan between

Michigan parties, notwithstanding the bare allegation that "decisions" regarding the alcoholism treatment of the Michigan man who caused the accident in Michigan were earlier made in a foreign jurisdiction.

Even if Texas had an interest in having its law applied to this Michigan accident, a Michigan court would apply the law of the state whose interest proves to be greater when the states' interests are weighed. *Olmstead v Andersen*, 428 Mich 1 (1987); *Barney v PV Holding Corp.*, 218 Mich App 167 (1996).  Here, there is simply no significant Texas nexus, and every factor favors application of Michigan law.  Additionally, the Restatement (Second) of Conflicts of Laws suggests that in cases of wrongful death, the law of the place of injury presumptively applies to the action.  *See*, Restatement (Second) of Conflict of Laws §175 ("In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . . . ).

Similarly, in ordering transfer from the Eastern District of Texas to the Eastern District of Michigan, Judge Ward wrote:

> Michigan substantive law will likely apply to the majority of issues in this case.  Potentially, there might be instances where Texas law is applied, but it seems likely that Michigan law will largely govern this case.

Memorandum Opinion and Order, p. 8.

### D.   An Employer Has No Duty to Prevent Injury Away From the Employer's Premises Caused by an Intoxicated Employee

Plaintiff's complaint is premised on the allegations that UGS knew Mr. Wellinger had a drinking problem; that it had earlier enrolled him in a treatment program that was

not effective; that on the day of the accident he was drinking at his office and visibly intoxicated, and that he was directed to go see a psychiatrist that day by his supervisor.

Even if those allegations were established, plaintiff does not state a claim against UGS under Michigan law.  Michigan courts have carefully considered the competing policies and determined that no cause of action exists under the facts in Plaintiff's Complaint.  If a fact finder were to conclude that Wellinger drank at work, was visibly intoxicated at work and was directed to leave work for a psychiatric appointment by UGS management on the day of the accident (Complaint ¶3.12) - - facts UGS would vigorously dispute at trial - - such facts would not state a claim under Michigan law. Plaintiff's claims that UGS negligently controlled, retained and supervised an alcoholic employee (Complaint ¶¶ 4.1-4.6) are similarly barred by Michigan law.

The Michigan Supreme Court declared in *Millross v Plum Hollow Golf Club*, 429 Mich 178, 196 (1987), that employers have no duty to third parties under facts similar to those alleged by plaintiff:

> We decline to adopt the rationale of *Romeo [v. Van Otterloo*, 117 Mich App 333 (1982)] and we hold that the special relationship between employer and employee does not itself require the employer to protect third parties from off-premises injuries, either by supervising the consumption of alcohol or by providing alternate transportation.

In *Millross*, Plum Hollow Golf Club ("Plum Hollow") served its employee Daniel Tomachowski ("Tomachowski") alcohol at a dinner held at the Club that Plum Hollow required him to attend. *Id* at 182.  While driving home intoxicated from this work function, Tomachowski struck and killed James Millross. *Id.* at 181.  In addition to claims under Michigan's dram shop laws, which were also dismissed, the *Millross*

7

Plaintiffs alleged Plum Hollow was liable for Tomachowski's negligent driving by reason of the doctrine of respondent superior and its improper supervision and negligent failure to prevent intoxication of its employee. *Id.* at 182. In affirming the trial court's dismissal of all of Plaintiff's claims, the court held that employers have no duty to prevent employees from injuring third parties off the employer's premises. *Id.* 195.

Similarly, in *Premo v General Motors*, 210 Mich App 121, 123-124 (1995), the Michigan Court of Appeals, citing *Millross*, held that an employer has no duty to third persons injured by an intoxicated employee - - even when the employee allegedly became intoxicated at work. Plaintiffs alleged that Eugene Kukowski ("Kukowski"), an employee of Defendant General Motors ("GM"), was scheduled to work from 4 p.m. until midnight on June 8, 1991. *Id.* at 122. Kukowski allegedly left work at 11 p.m., drank at a bar, and struck Plaintiff Linda Premo while driving home from the bar. *Id.* Plaintiffs also claimed that Kukowski drank both before and during work and that GM violated its own internal policy "of not allowing employees to leave the plant in their automobiles while intoxicated, but instead detaining them and arranging alternative transportation to their homes." *Id.*

Under the facts of *Premo*, similar to those alleged here, the Michigan Court of Appeals held that GM had not assume a duty to Plaintiff:

> Plaintiffs acknowledge the holding of *Millross*, but contend that they nevertheless have stated a claim based on the principle that one who voluntarily assumes a duty has an obligation to exercise some degree of care and skill in the performance of what he has undertaken. Plaintiffs' reliance on this principle is misplaced. Defendant's internal policy of preventing intoxicated employees from driving did not, as a matter of public policy, amount to General Motors' assumption of a duty to protect the public at large. The trial court's opinion

aptly states the public policy reasons militating against imposing a duty under these facts.

> Significant and compelling public policy reasons support a conclusion of an insufficient "undertaking" in this case. Alcohol and substance abuse is a serious societal problem causing significant human suffering and economic loss. In the work setting alcohol use and related problems undoubtedly cost employers and the national economy hundreds of millions, if not billions, of dollars each year in lost work time, efficiency, product quality, health and medical costs, workers' compensation, etc. To impose liability upon an employer who, by means of work rules, policies, etc. undertakes to address the problem of alcohol use and/or abuse is clearly against public policy and would encourage employers to abandon all efforts which could benefit such employees in order to avoid future liability.

*Id.* at 123-124 (internal citations omitted). In conclusion, the court held that the "relationship between defendant and [Plaintiff] was too remote to obligate defendant to protect her." *Id.* at 124.

State and federal courts applying Michigan law have consistently applied the holding of *Millross* and *Premo*.

In *Pierron v GMC*, No. 201374, 1994 LEXIS 1893, 1-2 (Mich App 1998), (copy attached), the Michigan Court of Appeals affirmed the trial court's finding that the employer had no duty to a third party injured by an intoxicated employee:

> Even assuming arguendo that defendant had an internal policy in place to prevent intoxicated employees from driving, and that defendant took partial action here to prevent the intoxicated employee from leaving, as a matter of law defendant did not assume a duty to protect the public at large. *Premo v General Motors*, 210 Mich App 121, 124; 533 NW2d 332 (1995). Plaintiff's argument concerning the existence of a contract goes

9

only to the nature of the relationship between the parties. *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967). The employer-employee relationship between defendant and the intoxicated employee did not give rise to a duty to plaintiff's decedent. *Premo*, supra at 123.

In *Benedict v GMC*, 1997 U. S. Dist. LEXIS 9230 (W.D. Mich 1997), (copy attached), District (now Sixth Circuit) Judge McKeague faced an analogous claim, where a drunken GM employee was ordered to leave the plant and died in an accident on the way home. The estate of the employee alleged that GM had "a duty to make sure that any employee who is ordered to leave work because she is intoxicated will make it home safely." *id* at 7. Citing to *Premo*, the Court rejected such a duty in a well-reasoned opinion that has equal application here:

> The Court finds that . . . an employer simply does not have a common law duty to make sure intoxicated employees removed from the work site make it home safely. Plaintiff's counsel at oral argument conceded he knows of no cases that support such a duty, but instead asks this Court to create such a duty. The Court declines this invitation. While employers may have a moral obligation to do what they can to help an incapacitated employee get home safely, the law does not impose liability on those who fail to take such precautions. The facts of this case clearly illustrate why the imposition of such a duty would make little sense and would mistakenly place the duty on the actor least able to prevent the harm. Employers can only do so much. Short of physically restraining an employee and risking a civil suit for false imprisonment, employers generally have no control over their employees after they leave the work premises and are certainly in no position to demand that every employee pass a Breathalyzer test before driving home. Employees, on the other hand, can easily prevent the harm complained of in this action. They need only refrain from drinking before or during their work hours. Failing to heed such a common sense requirement, leaves them vulnerable to whatever tragedy results from their own intoxication. To place the blame

on the employer in this case would turn justice upside down. No such result is warranted.

The Court holds in the alternative that based on the facts in this case the GM defendants did not have a common law duty to make sure Dumont, an intoxicated employee who was removed from the work site, made it home safely after she was ordered to leave her employer's premises.

*Id.* at 11-12.

In *Killian v Caza Drilling, Inc.*, 131 P. 3d 975 (Wyo 2006), (copy attached), the

Supreme Court of Wyoming found the reasoning of the Michigan Court of Appeals in

*Premo* persuasive in affirming dismissal of a wrongful death action against an employer

by the estate of a bicyclist who was killed by an off-duty employee, who had become

intoxicated at the employee's worksite:

> We, however, think it more likely that an imposition of a duty under these circumstances would merely result in an employer forgoing adoption of any safety rules to avoid the risk of liability. *Premo*, 533 N.W.2d at 333. If it were even possible, let alone practicable, for an employer to monitor and control the conduct of their employees when they are off duty and off premises, the costs incurred to do so would be significant. An employer would be exposed to liability from an undefined, limitless class of potential plaintiffs. The community would suffer because employers would either abandon efforts to create a safer workplace to avoid liability or they would have to absorb the costs to protect themselves by cutting other expenses. Imposition of a duty in these circumstances would have significant effects on litigation as plaintiffs seek a "deep pockets" defendant. The dockets of the trial courts would face an increase in the amount and complexity of negligence cases. Any safety benefits derived from enforcing the policy would be lost if the risk of liability is greater than the cost of enforcement and employers simply rescind or refuse to implement safety policies. The burden on the employer does not arise from requiring it to enforce its safety policies but from

> requiring it do so for the benefit of a limitless class of potential plaintiffs. Compared to the negative consequences of imposing a duty under these circumstances, the benefits of doing so are slight.

131 P.3d at 987.

The rule adopted by Michigan Courts of refusing to impose a duty on employers to prevent injury to third persons caused by an intoxicated employee off the employer's premises, and in the employee's own vehicle, is consistent with that of many jurisdictions, as reflected in the cases (attached) summarized below:

*Mosko v. Raytheon Co.*, 416 Mass. 395, 400-01, 622 N.E.2d 1066 (1993) (Employer had no liability for injuries caused by employee's intoxicated driving following an employer-sponsored holiday party. "Raytheon employees attending the Christmas party purchased their own drinks from a cash bar staffed by the employees of Peter C's. Raytheon did not furnish or pay for the alcohol consumed by its employees, and there is nothing to show that Raytheon had any control over the manner in which the employees of Peter C's performed their bartending duties."). (Exhibit A).

*Johnston v. KFC Nat'l Management Co.*, 71 Haw. 229, 233, 788 P.2d 159, 161 (1990). In *Johnston*, a KFC employee attended a KFC Christmas party, became intoxicated, and later collided with Johnston while driving home after attending a second party. The court rejected plaintiff's argument that KFC was negligent in permitting alcoholic beverages to be consumed on its premises, in failing to prevent the driver of the vehicle from becoming intoxicated, and in failing to prevent her from driving while intoxicated. (Exhibit B).

*Hanakahi v. United States*, 325 F. Supp. 2d 1125, 1130 (D. Haw. 2002) (following Hawaii law) (United States owed no duty to third party injured by soldier who drove drunk after drinking in government-owned barracks.) (Exhibit C).

*Riddle v. Arizona Oncology Serv., Inc.*, 186 Ariz. 464, 924 P.2d 468, 473 (Ariz. Ct. App. 1996). In *Riddle*, an employee was visibly intoxicated at work. Due to her impairment, the employer ordered her to leave the premises before the end of her shift. The employee left in her vehicle and injured a third party in an accident. Under those circumstances, the court found that the employer never took the employee into his custody, had no duty to do so, and further, that the "employer lacked the corresponding legal right to exercise such control." (Exhibit D).

*Holliman v. United States*, 22 F. Supp. 2d 1111, 1113-1114 (D. Ariz. 1998) (following Arizona law) (United States owed no duty to third party injured by soldier who drove drunk after drinking in Air Force base.) (Exhibit E).

*Bauer v. United States*, 882 F. Supp. 516 (D.S.C. 1995) (following South Carolina law) (Government owed no duty to third parties injured by off-duty Marines driving drunk.) (Exhibit F).

*Crow v. Cal.*, 222 Cal. App. 3d 192, 208 (Cal. Ct. App. 1990) (University had no duty to monitor "an adult college student voluntarily participating in drinking beer at the dormitory" and no liability to third party for resulting assault.) (Exhibit G).

*Meyers v. Grubaugh*, 242 Kan. 716, 723, 750 P.2d 1031 (1988) (Employer undertook no duty to keep drunk employee from driving home.) (Exhibit H).

*Prugue v. Monley*, 29 Kan. App. 2d 635, 639, 28 P.3d 1046 (2001) (Employment manual's prohibition of drinking on duty does not constitute employer undertaking to protect third parties from foreseeable risks created by bar manager's alcohol consumption.) (Exhibit I).

*Congini* v. *Portersville Valve Co.*, 504 Pa. 157 (1983) (Employer had no duty to withhold drunken employee's keys at company Christmas party because employer had no right to control employee's car.) (Exhibit J).

*Terry v. Stumpf Motor Co.*, 142 Wis. 2d 937 (Wis. Ct. App. 1987) (Employer has no duty to prevent employee from driving home from Christmas party drunk.) (Exhibit K).

Outside of the employment context, Michigan courts have also rejected imposing a duty in analogous situations. *See*, *Buczkowski v. McKay*, 441 Mich. 96 (1992) (relied on by *Premo*) (retailer owes no duty to third party injured by shotgun ammunition sold to intoxicated customer); *Braun v. York Props.*, 230 Mich. App. 138, 148 (1998) (lessor with a no-pets policy does not owe a duty to third parties to enforce its policy against lessees).

Plaintiff cannot circumvent these opinions by attempting to impute Wellinger's negligence to UGS, because such a result would clearly conflict with the holdings set out above.   Furthermore, Plaintiff is barred by Michigan vicarious responsibility law. Plaintiff acknowledges that Wellinger had left work and was driving to a personal appointment.   (Complaint ¶3.11.)   Michigan courts long have followed the rule that negligence of an employee operating his vehicle in transit to or from the workplace does

13

not constitute an act committed within the scope of his employment, which could subject his employer to vicarious liability for an accident. *Vitaioli v Berklund*, 295 N.W. 557 (Mich. 1941); *see also Bajdek v Toren*, 169 NW2d 306 (Mich. 1969). Finally, Michigan law is clear that "the master is under no peculiar duty to control the conduct of his servant while he is outside the master's premises, unless the servant is at the time using a chattel entrusted to him as a servant." *Millross* (quoting RESTATEMENT (SECOND) OF TORTS §317, comment b and citing *Meany v Newell*, 367 NW 2d 472 (Minn. 1985)). As Plaintiff acknowledges, Wellinger drove his own personal vehicle at the time of the collision. (*See* Complaint ¶3.2) Thus, UGS cannot be held liable for Wellinger's acts. Plaintiff's claims must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

Plaintiff's complaint raises no unique theory under which an employer can be held liable for off-premises torts committed by intoxicated employees. The instant case is certainly a sad and powerful example of the destructive effects of alcoholism. It is not, however, an excuse to impose liability where there is no duty. Plaintiff's action against UGS has no basis in law, and must be dismissed.

Respectfully submitted,

/s/ Herschel P. Fink   (P13427)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendant UGS
2290 First National Building
Detroit, MI   48226
(313) 465-7400
Dated:  November 29, 2007          hfink@honigman.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2007, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system and I hereby certify that I have mailed by United States Postal Service the paper(s) to the following non-ECF participants: Mikal C. Watts, Francisco Guerra IV and Eric Brian Porterfield.

/s/ Herschel P. Fink    (P13427)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendant UGS
2290 First National Building
Detroit, MI   48226
(313) 465-7400
hfink@honigman.com

DETROIT.2735925.6

15