UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, ET AL.,

    Plaintiffs,

v.

UGS CORP.,

    Defendant.
                                   /

Case No. 07-15000

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [3]**

This negligence action was transferred here from the United States District Court for the Eastern District of Texas. It arises out of a tragic traffic accident that occurred on May 3, 2005, on Twelve Mile Road in Farmington Hills, Michigan. Thomas Wellinger drove his SUV at a high rate of speed into the rear of a vehicle driven by Judith Weinstein and in which her two young children, Alexander and Samuel, were passengers, killing all but Mr. Wellinger. Mr. Wellinger was intoxicated at the time of the accident. Plaintiff's complaint alleges that Defendant, Mr. Wellinger's employer, is both vicariously and directly liable for the deaths of Plaintiff's decedents.[1]

This matter is before the Court on Defendant's motion to dismiss. For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

---

[1] Gary Weinstein, the husband and father of the decedents, is suing in his individual capacity and as the representative of the Estates of Judith, Alexander and Samuel Weinstein. Although suing in both capacities, Plaintiff is referenced in the singular.

**I.     Facts**

The following facts are from Plaintiff's complaint.

On May 3, 2005, Judith Weinstein was driving her two young sons to the orthodontist's office.  At approximately 3:30 p.m., Mrs. Weinstein was in the left-hand lane of the road, waiting to turn into the office parking lot.  Mr. Wellinger, who was driving his SUV down the road at about 70 miles per hour, hit the back of Mrs. Weinstein's car, killing her and her two young sons.  Mr. Wellinger survived the accident.  His blood alcohol level at the time was almost 0.40 (several times over the legal limit).  (Pl.'s Compl. at ¶¶ 3.1-3.4.)

At the time of the accident, Mr. Wellinger was an executive director of sales for Defendant UGS and worked at its Livonia, Michigan offices.  His superior, Ed Arlin, was an Executive Vice President. (*Id.* at ¶ 3.5-3.6.)  Plaintiff alleges that Defendant was aware of Mr. Wellington's serious drinking problem.

In January 2005, Ed Arlin asked two UGS employees to confront Mr. Wellinger with Arlin's suspicion that Wellinger had a serious drinking problem.  UGS enrolled Mr. Wellinger in an abbreviated, five-day rehabilitation program.  After completing the rehabilitation program and returning to work, Wellinger continued to exhibit signs of alcohol abuse.  It was obvious to numerous people at UGS, including Mr. Arlin, that Wellinger had a serious drinking problem.  (*Id.* at ¶¶ 3.6-3.8.)

On May 3, 2005, the day of the accident, Mr. Wellinger arrived at his UGS office at 7:25 a.m.  Other than leaving the office for about an hour for lunch, he was at the office continuously from that time until he left shortly after 2:30 p.m. for the psychiatric appointment he was directed to attend by his superior, Mr. Arlin.  (*Id.* at 3.11.)

Before Wellinger left his office on May 3, 2005, he had a meeting with Arlin. Arlin confronted Wellinger about his continued job performance problems and attributed them to Wellinger's alcohol abuse. During that meeting, Arlin explained the plan of action that Defendant UGS had decided to take as a condition of continuing Wellinger's employment as an executive at UGS. Mr. Arlin, with the approval of executives at UGS's home office in Texas, directed Wellinger to see a psychiatrist that afternoon and to report back to Arlin with the doctor's recommendations for treating Wellinger's alcohol problems. (*Id.* at ¶ 3.9.)

Wellinger had been drinking at his office on the day of the accident and was obviously intoxicated during this meeting with Mr. Arlin and during a meeting with a manager minutes before he left UGS that afternoon. (*Id.* at ¶¶ 3.11-3.12.) At the time of the accident, Mr. Wellinger was driving from his UGS office to his psychiatric appointment, with a blood alcohol level of approximately .40. A blood sample taken at 5:15 p.m. that day showed 435 mg/dL of Ethyl Alcohol. A blood sample taken the morning after the accident showed Mr. Wellinger still had an alcohol level above the legal limit (114 mg/dL). (*Id.* at ¶ 3.11.) Mr. Wellinger's consumption of alcohol during the workday at his UGS office and his obvious intoxication upon leaving the UGS office during the workday on May 3, 2005, was a proximate cause of the accident that took the lives of Judith, Alexander and Samuel Weinstein. (*Id.* at 3.13.)

The decisions regarding how to handle Mr. Wellinger and his problem with becoming drunk during his working hours at UGS were made, ratified, and/or approved by personnel in UGS's corporate headquarters in Texas. UGS personnel at the highest levels, including UGS's Chairman, CEO, and President, Tony Affuso, had personal knowledge of Mr. Wellinger's continuing alcohol abuse and made decisions as to how UGS would use

alcohol rehabilitation programs and would continue to actively employ Mr. Wellinger even though he was in a state of obvious intoxication during the workday.  (*Id.* at ¶ 3.10.)

After the accident, Mr. Wellinger was charged with second degree murder, pled no contest in Oakland County Circuit Court, and was sentenced to 19 to 30 years in prison.

On May 1, 2007, Plaintiff filed a negligence action against Defendant UGS in the United States District Court for the Eastern District of Texas.  The matter was subsequently transferred here after that Court granted Defendant's motion to transfer venue pursuant to 28 U.S.C. §§ 1404(a) and (b).  Plaintiff's complaint alleges that Defendant UGS is both vicariously and directly liable for the deaths of Plaintiff's wife and two sons and seeks both compensatory and punitive damages.  (*Id.* at ¶ 5.1, 6.1, 7.1.)

This matter is now before the Court on Defendant's motion to dismiss all the claims asserted in Plaintiff's complaint.

**II.    Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).  This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements

to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

As observed by the Sixth Circuit, the Supreme Court recently clarified what a plaintiff must plead to survive a Rule 12(b)(6) motion to dismiss. *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007)). Specifically, it rejected the standard announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 127 S. Ct.] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548. The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

**III. Analysis**

This matter is now before the Court on Defendant's motion to dismiss arguing that Michigan law, the law of the forum state, applies here and does not recognize Plaintiff's

5

claims against Defendant UGS. This Court first addresses Defendant's choice-of-law argument.

### A. Michigan Law Applies

This Court has diversity jurisdiction over this matter. State law will thus supply "the substantive rules of decision; and, as the forum state, Michigan supplies the choice-of-law rules." *Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)).

Michigan's choice-of-law rule relevant to this case provides that Michigan law will apply unless there is a "rational reason" to displace it. *Sutherland v. Kennington Truck Serv., Ltd.,* 562 N.W.2d 466, 471 (Mich. 1997). A two-step analysis is used to determine whether a rational reason to displace Michigan law exists. "First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* Under this standard, Michigan courts will use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter. *Hall v. Gen. Motors Corp.,* 582 N.W.2d 866 (Mich. Ct. App. 1998).

Applying the analysis announced in *Sutherland*, this Court concludes that there is no rational reason to displace Michigan law. Acknowledging that Defendant UGS's corporate headquarters are located in Texas and some employment decisions as to Mr. Wellinger may have been made there, this Court concludes that Michigan's interests in this litigation are far more significant than any Texas may have. Michigan's connections to this action

are many. The accident occurred here. All those involved in the accident were citizens of Michigan. Plaintiff is a citizen of Michigan, and the estates of his deceased wife and young sons are being probated in Oakland County, Michigan. At the time of the accident, Mr. Wellinger was employed by UGS at its Livonia, Michigan office. All UGS employees who had contact with Mr. Wellinger on the day of the accident did so at the Livonia, Michigan office. Accordingly, under Michigan's choice-of-law rules, Michigan's substantive law will apply to Plaintiff's negligence action.

### B. Plaintiff's Negligence Claims

Plaintiff alleges that Defendant UGS is both vicariously and directly liable for the wrongful death of his wife and young sons. Defendant UGS's motion argues that, whether expressed in terms of respondeat superior, "vice principal," negligent retention, or negligent supervision, Plaintiff cannot state a claim under Michigan law. Defendant's arguments as to Plaintiff's claims of vicarious liability are discussed first.

#### 1. Claims of Vicarious Liability

Plaintiff alleges that Defendant UGS is vicariously liable for its employee's negligence under two theories: respondeat superior and vice principal. The Court addresses respondeat superior first.

##### a. Respondeat Superior

Under Michigan law, an employer's vicarious liability under the doctrine of respondeat superior is as follows: "[A] master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment" but "is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control."

*McMullen v. Duddles*, 405 F. Supp.2d 826, 830 (W.D. Mich. 2005) (internal quotations and citations omitted).

Plaintiff first asserts that UGS is vicariously liable under the doctrine of respondeat superior because Wellinger caused the May 3, 2005 accident while in the course and scope of his employment with Defendant UGS. In support of this claim, Plaintiff alleges that Wellinger was directed, as a condition of his continued employment, to attend an afternoon appointment with a psychiatrist and to report back to UGS with the doctor's recommendations for treating his alcohol problem and was on his way to that appointment when the accident occurred. (*Id.* at ¶¶ 3.9, 4.2.)

Defendant argues that Michigan law does not recognize respondeat superior liability against an employer under these facts. This Court disagrees. Applying the appropriate motion to dismiss standard of review, the Court is persuaded that the Michigan Supreme Court would recognize a claim of vicarious liability against an employer for its employee's negligence when it is alleged that: (1) the employer knew that an employee was drinking on the job and had a chronic alcohol problem, (2) the employer knew or should have known that the employee was obviously intoxicated while at work, (3) the employer directed the employee to leave the workplace to attend an appointment during the workday and to report back to it as a condition of continued employment, and (4) the accident giving rise to the lawsuit occurred while the employee was <u>within the scope and course of his employment</u> because he was on his way to an appointment that his employer directed him to attend.

Under Michigan law, "a master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment." *Rogers v. J.*

*B. Hunt Transport, Inc.*, 649 N.W.2d 23, 26 (Mich. 2002) (internal quotation and citation omitted).  Michigan law further recognizes (in the context of both worker's compensation cases and negligence cases) that an employee is in the course and scope of employment not only while attending a special function or mission but also while driving to and from that special function or mission.  *See* (worker's compensation cases) *Stockley v. School Dist. No. 1 of Portage Twp.*, 204 N.W.2d 715, 717-18 (Mich. 1925) (teacher killed in automobile accident on way to seminar her employer requested all teachers to attend); *Allison v. Pepsi-Cola Bottling Co.*, 454 N.W.2d 162, 167 (Mich. Ct. App. 1990) (intoxicated employee killed in accident while driving home from a company-sponsored social event that benefitted both the employee and the employer).  *See also* (negligence cases) *Bajdek v. Toren*, 169 N.W.2d 306 (Mich. 1969) (holding, in a negligence action brought against the employer of a wedding photographer by the estate of a deceased passenger in a car hit by the employee on his way home from the reception, that the question whether the employee was acting within the scope of his employment was one of fact for the jury);  *Vitaioli v. Berklund*, 295 N.W. 557, 559 (Mich. 1941) (observing that the question whether the employee was acting within the scope of his employment was one of fact for the jury).

Acknowledging that factual disputes remain whether, at the time of the accident, Wellinger was "in the course and scope of his employment" and that Plaintiff's claims may not survive a motion for summary judgment,[2] the factual allegations in Plaintiff's complaint are nonetheless "enough to raise a right to relief above the speculative level on the

---

[2]"As a general rule, the trier of fact determines whether an employee was acting within the scope of his employment; however, summary judgment is appropriate if it is apparent that the employee was acting to accomplish a purpose of his own." *McMullen*, 405 F. Supp.2d at 830 (internal quotations and citation omitted).

assumption that all the allegations in the complaint are true." *Twombly*, 127 S.Ct. at 1964-65. The Michigan case law Defendant relies upon does not support a contrary conclusion, primarily because it addresses theories of direct, as opposed to vicarious liability, against an employer. That case law is discussed here.

In *Millross v. Plum Hollow Golf Club*, 413 N.W.2d 17 (Mich. 1987), the Michigan Supreme Court considered negligence claims brought by the widow of a motorist killed in a traffic accident against the employer of the driver of the other vehicle. It held that Michigan's Dramshop Act's exclusive remedy provision bars negligence claims against an employer when the employer is a liquor licensee and the negligence claims arise out of and are predicated upon the employer-liquor licensee's furnishing of intoxicating beverages to its employee at an employer-sponsored work event. *Id.* at 19-23. The Court also rejected the widow's argument that she had pled negligent claims against the employer that were independent of the employer's conduct of furnishing alcohol to its employee. "Plaintiff's claims of improper supervision and failure to provide alternate transportation must be read to assert not the breach of an independent duty to third parties, but rather to allege a negligent failure to prevent intoxication of an employee or negligence in permitting an employee who is tired and has been drinking, but is not visibly intoxicated, from driving his own vehicle." *Id.* at 24. The *Millross* Court explained that "[i]f Michigan recognized a common-law claim against [the employer] as a dramshop owner, it would be for the negligence in serving [its employee] intoxicants when he was tired and where it was reasonably foreseeable that he would drive his own vehicle. . . . The dramshop act is plaintiff's exclusive remedy for the furnishing of alcoholic beverages, and this preclusion

extends . . . to allegations that the employer was negligent in furnishing alcohol to a tired but otherwise able-bodied employee." *Id.* at 25.

The *Millross* Court further observed that "the special relationship between employer and employee <u>does not of itself</u> require the employer to protect third parties from off-premises injuries, either by supervising the consumption of alcohol or providing alternate transportation." *Id.* at 25 (emphasis added). Expressly overruling the Michigan Court of Appeals' decision in *Romeo v. Van Otterloo*, 323 N.W.2d 693 (Mich. Ct. App. 1982), it held that the plaintiff's allegations that an employer failed "to properly supervise a tired employee who is consuming alcoholic beverages and to provide transportation where it is reasonably foreseeable that the employee will undertake to drive himself away from the employment premises" fails to state a valid negligence claim against the employer. *Id.* at 26. The Court cautioned, however, that it was "not called upon to express an opinion as to whether a plaintiff who alleges that an employer knew or should have known that its employee could not be entrusted with the responsibility imposed by the employer so as to give rise to a foreseeable risk of harm to others" states a valid negligence claim against an employer. *Id.*

The *Millross* Court concluded by observing that the allegations in the plaintiff's complaint failed to establish a duty on the part of the defendant employer "because it ha[d] not been alleged that the [employer] knew or should have known of the existence of any special circumstances regarding [the employee] that could establish a duty of care to third persons." *Id.* It also declined to express an opinion on "the viability of such a claim." *Id.* It did, however, clarify that "[a] lengthy work day, combined with required attendance at the banquet [where alcoholic beverages were consumed], does not create a reasonably

foreseeable risk of harm from which would arise an independent duty to supervise or provide alternative transportation." *Id.* at 26.

In sum, *Millross* did not address two key facts alleged in Plaintiff's complaint here: (1) the accident occurred while the employee was in the scope and course of his employment, and (2) the employer knew or should have known that its employee could not be entrusted with its direction to drive to an appointment because he was obviously intoxicated. The Michigan Supreme Court in *Millross* left open the question whether, under the additional facts alleged by Plaintiff, an employer could be held liable to a third party for injuries suffered as a result of an automobile accident that occurs off the employer's premises and is caused by the negligence of its employee who is using his own vehicle.

Defendant's reliance on *Premo v. General Motors Corporation*, 533 N.W.2d 332 (Mich. Ct. App. 1995), to show there can be no vicarious liability is similarly misplaced. *Premo* also addressed an employer's direct liability; not vicarious liability under the doctrine of respondeat superior.

In *Premo*, despite the defendant employer's internal policy of preventing intoxicated employees from driving, the Michigan Court of Appeals held that, as a matter of public policy, an employer could not be found directly liable when an employee left work early, got drunk at a bar, and killed another person while driving home from the bar. *Id.* at 333. "To impose liability upon an employer who, by means of work rules, policies, etc. undertakes to address the problem of alcohol use and/or abuse is clearly against public policy and would encourage employers to abandon all efforts which could benefit such employees in order to avoid future liability." *Id.* (internal quotations and citation omitted). *Accord, Pierron v. General Motors Corp.*, No. 201374, 1998 WL 1991076, *1 (Mich. Ct. App. July 10, 1998)

(same under circumstances where employer took partial action to prevent an intoxicated employee from driving); *Benedict v. General Motors Corp.*, No. 5:96-CV-88, 1997 U.S. Dist. LEXIS 9230 (W.D. Mich. 1997) (same under circumstances where the employer unsuccessfully took action to prevent an intoxicated employee from driving and fatally injuring herself in a car accident).

Defendant's motion seeking to dismiss Plaintiff's claim of vicarious liability under the doctrine of respondeat superior is denied. The Court now addresses the second theory under which Plaintiff seeks to hold Defendant vicariously liable.

**b. Vice Principal**

Plaintiff further alleges that UGS is vicariously liable because, at the time of the accident, its employee was acting as a vice-principal of UGS. (*Id.* at ¶¶ 3.5, 4.3, 5.1.) Plaintiff argues that Michigan law recognizes that corporations can be held vicariously liable for the negligent acts of their upper management. Defendant, citing the same Michigan cases as Plaintiff and adding another, correctly observes that the doctrine has been applied only where an employer's liability for injuries to one of its employees is at issue. *See Schroeder v. Flint & P.U.R. Co.*, 61 N.W. 663, 664 (Mich. 1894); *Mesich v. Tamarack Mining Co.*, 151 N.W. 564, 565, 568 (Mich. 1915); *People v. Lanzo Const. Co.*, 726 N.W.2d 746, 752-53 (Mich. Ct. App. 2006) (addressing "[w]hether a corporation may be held criminally liable under MIOSHA for the conduct of its employee" that led to the death of another employee on the job site). More importantly, as illustrated in a case Plaintiff relies on for a different point, *Zsigo v. Hurley Medical Center*, 716 N.W.2d 220 (Mich. 2006), the Michigan Supreme Court is not inclined to recognize exceptions to Michigan's well-established respondeat superior nonliability rule by creating liability for an employer when

13

its employee's challenged conduct is outside the scope or course of his employment. *Id.* at 221-22, 227 (declining to adopt an "aided by agency" exception to the general rule of employer nonliability for the tortious conduct of an employee who is acting outside the scope of his employment and further observing that "employers will continue to be subject to liability for their negligence in hiring, training, and supervising their employees" in a case where a former psychiatric patient sought to hold the employer hospital vicariously liable for its nursing assistant employee's sexual assault on her while she was a patient at the hospital).

Because Plaintiff's wife and children were not Defendant's employees, the "vice principal" doctrine does not apply. Defendant's motion to dismiss is granted in part, and Plaintiff's claims of vicarious liability asserted under this doctrine are dismissed.

The Court now addresses Plaintiff's claims of direct liability against Defendant UGS.

### 2. Claims of Direct Liability

Plaintiff also alleges that Defendant UGS is directly liable for the accident and resulting deaths. Plaintiff's negligent retention claim alleges that (1) UGS had a duty not to retain an employee who it knew or should have known had a continuing alcohol problem and who was obviously intoxicated at the workplace on the day of the accident; (2) UGS breached its duty of due care when, as an effort to allow the habitually drunken Mr. Wellinger to keep his job, directed that he attend an appointment with a psychiatrist the afternoon of the accident despite his obvious intoxication; and (3) UGS's acts of negligence proximately caused the accident and resulting deaths on May 3, 2005. (*Id.* at ¶¶ 3.6-3.8, 3.10-3.11, 4.5-4.6, 5.1.)

Plaintiff's negligent control or supervision claim alleges that (1) UGS had a duty to control or supervise an employee that it knew was highly and obviously intoxicated during the workday; (2) UGS breached its duty when it directed the intoxicated employee to drive to an appointment with a psychiatrist as a condition of his continued employment; and (3) UGS's acts of negligence proximately caused the accident and resulting deaths on May 3, 2005.  (*Id.* at ¶¶ 3.6-3.13, 4.4-4.6, 5.1.)

Defendant argues that Michigan law does not recognize direct liability against an employer for the negligent retention or supervision of its employee under the facts alleged in Plaintiff's complaint.  This Court agrees with Defendant as to Plaintiff's negligent retention claims, and disagrees with Defendant as to Plaintiff's negligent supervision claims.

### a. Negligent Retention

As to Plaintiff's claims of negligent retention, the Michigan Court of Appeals has held that it is against public policy to "[t]o impose liability upon an employer who, by means of work rules, policies, etc. undertakes to address the problem of alcohol use and/or abuse" because doing so "would encourage employers to abandon all efforts which could benefit such employees in order to avoid future liability."  *Premo*, 533 N.W.2d at 333.  *Accord, Pierron*, 1998 WL 1991076 at *1; *Benedict*, 1997 U.S. Dist. LEXIS at **10-12.  Thus, despite Plaintiff's allegations that Defendant UGS had knowledge of its employee's abuse of alcohol and had attempted to address the problem rather than firing the employee, Plaintiff cannot state a valid claim of negligent retention against Defendant UGS. Defendant's motion is granted in part, and Plaintiff's negligent retention claims are dismissed.

### b. Negligent Control or Supervision

This Court acknowledges that factual disputes remain whether Defendant's employee was visibly intoxicated at work on the day of the accident, ever drank at work, or was ordered by Defendant to leave work to attend a psychiatrist appointment as a condition of his continued employment, and that Plaintiff's claims of negligent control or supervision may not survive a motion for summary judgment.  Nonetheless, the factual allegations in Plaintiff's complaint are "enough to raise a right to relief above the speculative level on assumption that all the allegations in the complaint are true." *Twombly*, 127 S. Ct. at 1964-65.

In *Millross*, the Michigan Supreme Court held that the plaintiff did not state a valid negligence claim against the golf course employer for failing to supervise its employee's consumption of alcohol during a company-sponsored dinner event "because it ha[d] not been alleged that the [employer] knew or should have known of the existence of any special circumstances regarding [the employee] that could establish a duty of care to third persons."  *Millross*, 413 N.W.2d at 25.  It expressly left open the issue "whether a plaintiff who alleges that an employer knew or should have known that its employee could not be entrusted with the responsibility imposed by the employer so as to give rise to a foreseeable risk of harm to others" states a valid negligence claim against an employer." *Id.* at 26.

Unlike the plaintiff in *Millross*, Plaintiff here has pled facts showing that Defendant UGS knew or should have known about its employee's alcohol problem and intoxication on the day of the accident and should not have directed him, as a condition of his continued employment, to drive to an appointment during the workday, thus increasing the risk of

harm to others. Accordingly, Defendant's motion to dismiss Plaintiff's claim of negligent control or supervision is denied.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED as to (1) Plaintiff's claim of vicarious liability under theory that, at the time of the accident, Defendant's employee was acting as its vice-principal, and (2) Plaintiff's direct liability claim of negligent retention; and DENIED as to (3) Plaintiff's claim of vicarious liability under the doctrine of respondeat superior, and (4) Plaintiff's direct liability claim of negligent control or supervision.


       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: April 17, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 17, 2008, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager