UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as Representative
of the Estate of JUDITH WEINSTEIN, as Representative
of the Estate of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL WEINSTEIN,

        Plaintiff,

vs.                                      Case No. 2:07-CV-15000
                                      PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

SIEMENS, fka UGS CORP.,
        Defendant.

_____/

OPINION AND ORDER DENYING UGS CORPORATION'S MOTION *IN LIMINE* NO. 2 TO
EXCLUDE TESTIMONY CONCERNING TOM WELLINGER'S BEHAVIOR AT UGS
PRIOR TO MAY 3, 2005 (DKT. NO. 62)

      This matter is before the Court on Defendant Siemens, fka UGS Corp.'s ("Siemens") Motion *in Limine* No. 1 To Exclude Testimony Concerning Tom Wellinger's Behavior at UGS Prior to May 3, 2005. (Dkt. No. 62.) Plaintiff has filed a response (Dkt. No. 108) and Siemens has filed a reply (Dkt. No. 125.) For the reasons that follow, the Court DENIES Siemens' motion *in limine* No. 2.

**I.    BACKGROUND**

      The relevant facts underlying this case were set forth by this Court in its November 23, 2009 Opinion and Order Denying Defendant Siemens Corporation's Motion for Summary Judgment. *Weinstein v. Siemens*, 673 F. Supp. 2d 533 (E.D. Mich. 2009). This action arises from a tragic accident that occurred in the early afternoon of May 3, 2005. Thomas Wellinger, then an employee of UGS, a subsidiary of Siemens, left Siemens' offices and was scheduled to attend a doctor's

1

appointment to address his problems with alcohol abuse when he drove his Chevrolet Denali SUV at a high rate of speed and struck the vehicle driven by Plaintiff's wife, Judith Weinstein and occupied also by the Weinstein's two young sons, Alexander and Samuel.  All three Weinstein family members were killed.  Mr. Wellinger, who was at fault, was injured and survived.  Mr. Wellinger was intoxicated at the time of the accident, with a blood alcohol level of nearly four times the legal limit. Subsequently, Mr. Wellinger pled no contest to second degree murder in Oakland County Circuit Court, and is currently incarcerated, serving a 19 to 30 year sentence.

Plaintiff's Complaint against Mr. Wellinger's employer, Siemens, was filed in the United States District Court, Eastern District of Texas, on May 1, 2007.  On Siemens' motion for change of venue, the case was transferred to this District and assigned to United States District Judge Nancy G. Edmunds on November 26, 2007.  On November 29, 2007, Siemens moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12.  The  motion was granted in part and denied in part by Judge Edmunds.  (Dkt. No. 13.)  *Weinstein v. UGS Corp.*, 2008 WL 1766657, No. 07-15000 (April 17, 2008) (dismissing Plaintiff's negligent retention and vice principal claims, but denying the motion to dismiss as to Plaintiff's vicarious liability and negligent supervision claims). Thereafter, due to a change in defense counsel, Judge Edmunds recused herself from the case, and the case was reassigned by the Court's blind draw system to the undersigned.

On November 23, 2009, this Court denied Siemens' motion for summary judgment, permitting Plaintiff to proceed with this case to a jury on the following two issues: (1) whether Siemens is vicariously liable for the deaths of Plaintiff's family members because "Siemens required Mr. Wellinger as a condition of his employment to attend his doctor's appointment on the day of the accident, and [] Siemens stood to derive a specific benefit from Mr. Wellinger's attendance at the

appointment that afternoon," and (2) whether Siemens is directly liable for the deaths of Plaintiff's family members because it "knew or should have known, before it mandated, as a condition of his further employment in his position, that Mr. Wellinger meet with his doctor that day, that Mr. Wellinger was intoxicated and 'could not be entrusted with the responsibility' it imposed upon him to go to that appointment and to report back to Mr. Arlin what the doctor recommended." (*Weinstein,* 673 F. Supp. 2d at 545, 553.)

## II.  LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999).  District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.  ANALYSIS

Siemens argues first that "Mr. Wellinger's intoxication - whether it be May 3, 2005 or anytime before - has no relevance to the question of vicarious liability." (Siemens MIL No. 2, Dkt. No. 62, 4.)  In proving its vicarious liability claim, Plaintiff will be required to establish that Siemens stood to benefit from Mr. Wellinger's attendance at his doctor's appointment the day of the accident.  In order to establish that his attendance would result in a benefit to Siemens, Plaintiff must be able to establish that Mr. Wellinger's drinking habits previously had an adverse affect on his job performance.  Proof of this fact is absolutely crucial to Plaintiff's vicarious liability claim and the Court disagrees with Siemens' statement that Mr. Welllinger's intoxication, whether prior to or on

3

May 3, 2005, has no relevance to the issue of vicarious liability. Prior incidents of alleged behavior indicating Mr. Wellinger's intoxication are highly relevant to Plaintiff's vicarious liability claim because Plaintiff must establish that Siemens was expecting to receive a benefit from Mr. Wellinger's treatment for his alcohol habit, which necessarily entails proof that Mr. Wellinger's job performance had suffered due to his abuse of alcohol, and that treatment would directly inure to the benefit of his employer.

Second, Siemens argues that, as to Plaintiff's direct liability claim, the "critical inquiry is whether UGS knew Tom Wellinger was intoxicated on May 3, 2005, the day it supposedly directed him to see his doctor. . . . whether Mr. Wellinger appeared drunk on any other day is irrelevant." (Siemens MIL No. 2, Dkt. No. 62, 4.) Again, the Court disagrees with Siemens' narrow framing of this issue. A critical issue before the jury on Plaintiff's direct liability claim will be whether Siemens knew or should have known that the conduct Wellinger was exhibiting the day of the accident was consistent with conduct he had exhibited on prior occasions when he was suspected of being intoxicated. While Siemens attempts to limit the permissible use of such evidence to the "rare instance" where the same individual both observed these behaviors on prior occasions and on the day of the accident, the Court disagrees that the permissible scope of such evidence is so limited. In establishing whether Siemens "knew or should have known" of Mr. Wellinger's intoxication on the day of the accident, evidence of prior instances of drunken behavior, which were known by management or generally known among the employees, are highly relevant to proof of Siemens' knowledge. Additionally, as stated in its ruling on Siemens' motion *in limine* No. 1, the Court agrees that allowing this evidence does not run afoul of Federal Rule of Evidence 404(a). Plaintiff does not offer evidence of Wellinger's drinking history to prove that Wellinger acted in conformity

with that behavior, i.e. was intoxicated, on the day of the accident.  Evidence of Wellinger's behavior prior to May 3, 2005, and Siemens' knowledge of that behavior, is crucial to Plaintiff's claims of liability against Siemens for each of the reasons outlined above.  As Plaintiff points out in its brief, a classic example of character as an operative fact in determining a party's liability is a negligent supervision claim, where an employer is alleged to have failed to adequately supervise an individual with a dangerous character trait.  *See* McCormick on Evidence § 187 (6th ed.).  For both its vicarious and direct liability claims, Plaintiff must establish knowledge on the part of Siemens of Wellinger's history of behavior allegedly related to his alcohol abuse as an element of the claim.  Thus, Plaintiff's proffered use of the evidence does not run afoul of the prohibitions of Rule 404(a).  *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793 n.4 (5th Cir. 1979) (noting that where a person's character trait is "an operative fact which determines the legal rights and liabilities of the parties," evidence of that trait "is not contemplated by the scope of Rule 404 because such evidence is not offered for the purpose of showing that a person acted in conformity with his character.") (quoting McCormick on Evidence § 187 at 443 (2d ed. 1972)).

Nor is the Court concerned, as Siemens argues, that permitting testimony regarding prior incidents of drunken behavior will invite "several mini-trials."  The number of instances of allegedly drunken behavior are clearly defined by the witness statements and the Court is not convinced that evidence relating to these instances will result in several time-consuming mini-trials as Siemens portends.  As the Court has previously ruled, this evidence is crucial to Plaintiff's ability to establish knowledge on the part of Siemens that would subject it to liability for Tom Wellinger's acts.  "The hazards of prejudice, surprise and time-consumption implicit in this manner of proof are more tolerable when character is itself in issue than when this evidence is offered as a mere indication that

the defendant committed the acts that are the subject of the suit." McCormick on Evidence § 187.

Accordingly, the Court DENIES Siemens' Motion *in Limine* No. 2 To Exclude Testimony Concerning Tom Wellinger's Behavior at UGS Prior to May 3, 2005 and will permit Plaintiff to introduce argument, testimony or other evidence regarding Tom Wellinger's behavior at Siemens prior to May 3, 2005.

IT IS SO ORDERED.

                                          S/Paul D. Borman
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

Dated: November 17, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 17, 2010.

                                          S/Denise Goodine
                                          Case Manager