UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as Representative
of the Estate of JUDITH WEINSTEIN, as Representative
of the Estate of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL WEINSTEIN,

        Plaintiff,

vs.                                   Case No. 2:07-CV-15000
                                       PAUL D. BORMAN
                                       UNITED STATES DISTRICT JUDGE

SIEMENS, fka UGS CORP.,
        Defendant.

_____/

## OPINION AND ORDER DENYING SIEMENS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE PLAINTIFF'S PROPOSED TRIAL EXHIBIT 133, NOTES PREPARED BY LORNA OLNEY AND ANY TESTIMONY FROM LORNA OLNEY (DKT. NO. 63)

This matter is before the Court on Defendant Siemens, fka UGS Corp.'s ("Siemens") Motion *in Limine* No. 3 To Exclude Plaintiff's Proposed Trial Exhibit 133, Notes Prepared by Lorna Olney and Any Testimony from Lorna Olney. (Dkt. No. 63.) Plaintiff has filed a response (Dkt. No. 118) and Siemens has filed a reply (Dkt. No. 126.) The Court held a hearing on November 18, 2010. For the reasons that follow, the Court DENIES Siemens' motion *in limine* No. 3.

**I.    BACKGROUND**

The relevant facts underlying this case were set forth by this Court in its November 23, 2009 Opinion and Order Denying Defendant Siemens Corporation's Motion for Summary Judgment. *Weinstein v. Siemens*, 673 F. Supp. 2d 533 (E.D. Mich. 2009). This action arises from a tragic accident that occurred in the early afternoon of May 3, 2005. Thomas Wellinger, then an employee

1

of UGS, a subsidiary of Siemens, left Siemens' offices and was scheduled to attend a doctor's appointment to address his problems with alcohol abuse when he drove his Chevrolet Denali SUV at a high rate of speed and struck the vehicle driven by Plaintiff's wife, Judith Weinstein and occupied also by the Weinstein's two young sons, Alexander and Samuel. All three Weinstein family members were killed. Mr. Wellinger, who was at fault, was injured and survived. Mr. Wellinger was intoxicated at the time of the accident, with a blood alcohol level of nearly four times the legal limit. Subsequently, Mr. Wellinger pled no contest to second degree murder in Oakland County Circuit Court, and is currently incarcerated, serving a 19 to 30 year sentence.

Plaintiff's Complaint against Mr. Wellinger's employer, Siemens, was filed in the United States District Court, Eastern District of Texas, on May 1, 2007. On Siemens' motion for change of venue, the case was transferred to this District and assigned to United States District Judge Nancy G. Edmunds on November 26, 2007. On November 29, 2007, Siemens moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12. The motion was granted in part and denied in part by Judge Edmunds. (Dkt. No. 13.) *Weinstein v. UGS Corp.*, 2008 WL 1766657, No. 07-15000 (April 17, 2008) (dismissing Plaintiff's negligent retention and vice principal claims, but denying the motion to dismiss as to Plaintiff's vicarious liability and negligent supervision claims). Thereafter, due to a change in defense counsel, Judge Edmunds recused herself from the case, and the case was reassigned by the Court's blind draw system to the undersigned.

On November 23, 2009, this Court denied Siemens' motion for summary judgment, permitting Plaintiff to proceed with this case to a jury on the following two issues: (1) whether Siemens is vicariously liable for the deaths of Plaintiff's family members because "Siemens required Mr. Wellinger as a condition of his employment to attend his doctor's appointment on the day of the

accident, and [] Siemens stood to derive a specific benefit from Mr. Wellinger's attendance at the appointment that afternoon," and (2) whether Siemens is directly liable for the deaths of Plaintiff's family members because it "knew or should have known, before it mandated, as a condition of his further employment in his position, that Mr. Wellinger meet with his doctor that day, that Mr. Wellinger was intoxicated and 'could not be entrusted with the responsibility' it imposed upon him to go to that appointment and to report back to Mr. Arlin what the doctor recommended." (*Weinstein,* 673 F. Supp. 2d at 545, 553.)

## II.     LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.    ANALYSIS

On or about April 13, 2005, Lori Pogoda, Mr. Wellinger's administrative assistant, began having concerns about her working relationship with Mr. Wellinger, whom she perceived as having "issues" at work relating to either alcohol or medication, and about her ability to work with him and to perform her job as his administrator. Ms. Pogoda contacted Lorna Olney, a human resource specialist for Siemens, to discuss her concerns. Ms. Olney testified that Ms. Pogoda was worried that she was going to get "dinged" because her ability to do her job was dependent on Mr. Wellinger doing his and he was not performing the essential functions of his job. (Pls.' Resp. to Def.'s MIL

3

No. 3, Dkt. No. 118, Ex. A, Deposition of Lorna Olney, March 11, 2009, 46-47.) Ms. Pogoda met with Ms. Olney and following the meeting, Ms. Olney contacted her direct supervisor, Mr. Meade, who told her to document the conversation she had with Ms. Pogoda and to send the report to Siemens' Corporate Counsel, Jo Anne Williams. (*Id*. 22-23, 25-26, 37-38.) Ms. Olney testified that she thought the meeting should be documented because of the concerns Ms. Pogoda expressed regarding her own job performance. (*Id*. 39.)

Siemens argues that the Court should exclude Ms. Olney's notes, and should preclude any testimony from Ms. Olney, because Ms. Olney lacks personal knowledge of the content of the notes, the notes are hearsay, are not relevant and, even if relevant, are more prejudicial than probative. Plaintiff responds that the notes are not hearsay because they are (1) an admission by a party opponent under Fed. R. Evid. 801(d)(2); (2) they are not offered to prove the truth of the matter asserted but are offered to prove that Siemens was on notice that Wellinger had an alcohol problem before the events of May 3, 2005; and/or (3) they are business records and admissible under Fed. R. Evid. 803(6).

The Court concludes that the Olney notes are not hearsay because they constitute party admissions under Fed. R. Evid. 801(d)(2)(D). "A statement is not hearsay if – . . . The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983). Plaintiff argues that the notes are admissible under 801(d)(2)(D) because Ms. Pogoda was acting within the scope of her employment and following company policy in reporting to a Siemens' human resource manager her concerns about Mr. Wellinger's behavior which was adversely

4

affecting Ms. Pogoda's ability to do her job. The Court agrees that Ms. Pogoda was acting within the scope of her employment when she reported her concerns to Ms. Olney and that the notes are admissible under Fed. R. Evid 801(d)(2)(D).

The Court also concludes that Ms. Olney's notes are admissible under Fed. R. Evid. 801(d)(2)(D) as an admission by a party opponent based upon Ms. Olney's position as a human resource employee. The notes of the conversation with Ms. Pogoda were prepared by Ms. Olney, a human resource specialist, clearly acting within the scope of her employment in meeting with Ms. Pogoda regarding Ms. Pogoda's concerns about matters relating to her own job performance. *See Blackburn v. United States Parcel Service, Inc.*, 179 F.3d 81, 96-97 (3d Cir. 1999) (recognizing that statements made by a human resource specialist regarding information she had received relating to an employee would properly have been admitted as an admission of a party opponent under Fed. R. Evid. 801(d)(2)(D) because the human resource specialist was acting within the scope of her employment in receiving the information). Moreover, in recording the statement, Ms. Olney was acting at the direction of her direct supervisor in human resources, Matt Meade, who instructed Ms. Olney to make notes of her conversation with Ms. Pogoda and to forward the notes to Siemens' corporate counsel. The notes were then retained by Siemens in their files and, according to Plaintiff, produced to Plaintiff as part of Mr. Wellinger's personnel file. Thus, the notes would also be admissible as a business record under Fed. R. Evid. 803(6). *See Brauninger v. Motes*, 260 F. App'x 634, 636-639 (5th Cir. 2007) (finding that investigation and documentation by a human resource manager of employee complaints of sexual harassment were part of the human resource manager's general duties and therefore their reports were admissible as business records) (citing *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 n. 7 (5th Cir.2002) (stating that human resource manager's

harassment investigation notes were admissible as a business record)).

Further, because Ms. Olney's notes are admissible as a party admission, they need not be based on her personal knowledge but may summarize the information provided to her by Ms. Pogoda. Although the Court recognizes that there is some authority to the contrary, it concludes that the better reasoned view is that the author of a party admission need not have personal knowledge of the statements contained in the party admission:

> The bulk of modern authority holds that personal knowledge is not required for agent's admissions, although some cases treat the question as remaining open. The few scraps of legislative history that bear on the question support the conclusion that personal knowledge is not required. The ACN [Advisory Committee Notes] accompanying Fed. R. Evid. 602 indicates that a witness who testifies about an out-of-court statement must have knowledge about "the making of the statement," and one might expect a comment that hearsay declarants are witnesses and need personal knowledge if this result were intended, but no such comment appears. More persuasively, the ACN to Fed. R. Evid. 801(d)(2) comments approvingly about "freedom" that admissions enjoy "from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge," which implies that personal knowledge is not required for admissions.

Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 8:55 (3d ed.2008). *See also Brookover v. Mary Hitchcock Memorial Hosp.*, 893 F.2d 411, 415-417, 419 (1st Cir. 1990) (finding that "there is nothing in [Fed. R. Evid. 801(d)(2)] requiring that the admission be based on personal knowledge by the relator of the event triggering the statement" and refusing to impose a requirement that the author of an admission receive its knowledge from non-hearsay sources.); *Blackburn*, 179 F.3d. at 96-97 ("Admissions by a party-opponent need not be based on personal knowledge to be admitted under Rule 801(d)(2). Therefore, we need not be concerned here that the basis for Knowles's statement is likely hearsay-i.e., she was told by someone (or discerned from a written document) that Bill and Tim Jawor were father and son, and that Jackie and Sal Biancardi were married-which would ordinarily require an additional exception to make her statements

admissible.") (citing *United States v. Ammar*, 714 F.2d 238, 254 (3d Cir.1983)); *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626, 630-631 (8th Cir. 1978) (refusing to impose a requirement that the declarant of a party admission have personal knowledge of the facts underlying his statement). Even those authorities imposing some level of personal knowledge in the context of a Rule 801(d)(2) admission do so when the statement contains nothing more than the repetition of speculative gossip, with no indicia of trustworthiness. *Id*. at 416. Ms. Pogoda's statement to Ms. Olney appears to be based principally on Ms. Pogoda's personal observations, and thus would possess sufficient factual content and indicia of trustworthiness to sustain their admissibility despite any lack of personal knowledge on the part of the preparer of the statement. The proper course is to admit the Olney notes and to permit their reliability to be tested on cross-examination. *See Mister v. Northeast Illinois Commuter Railroad* Co., 571 F.3d 696, 698-699 (7th Cir. 2009) (holding that it would have been proper to admit party opponent admissions, although they were based on multiple levels of hearsay, and test their reliability on cross-examination but upholding the district court's exclusion of the statements where the hearsay statements lacked any factual content and lacked any indicia of trustworthiness).

Siemens relies on *Dilley v. The Chesapeake & Ohio Railway Co.*, 327 F.2d 249 (6th Cir. 1964) for the proposition that an admission will only be binding on a party where the statements to which the party is to be bound were made by an agent in the scope of the agency or employment relationship. In *Dilley*, the employer gave his foreman the authority to prepare an accident report and the court held that the intracompany report was based upon a limited authority to investigate the accident and was not admissible as a party admission. *Id*. at 252-253. Plaintiff responds that the holding in *Dilley* was expressly rejected by the enactment of Fed. R. Evid. 801(d)(2) which, as

7

expressed in the Advisory Committee Notes, covers both statements authorized to be made to the principal as well as statements authorized to be made to third parties. Regardless of the viability of this aspect of *Dilley*, the Court does not find *Dilley* instructive in the instant case because the Court concludes that Ms. Olney was clearly acting within the scope of her regular employment as a Siemens human resource specialist when she memorialized the information provided by Ms. Pogoda concerning her working relationship with Mr. Wellinger. Accordingly, the Court concludes that Ms. Olney's notes are non-hearsay and are admissible as an admission of a party opponent under Fed. R. Evid. 801(d)(2)(D).

Siemens also argues that the Olney Notes, and any testimony relating to them, are not relevant because they do not address Mr. Wellinger's intoxication on May 3, 2005, the day of the accident. The Sixth Circuit has adopted a very liberal standard for the determination of relevancy. *Dortch,* 588 F.3d at 400 ("The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence. Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401.") (citing *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *Whittington*, 455 F.3d at 738-739 (internal quotation marks and citation omitted).

As this Court concluded in ruling on several of Siemens' motions *in limine*, evidence tending to establish Siemens' knowledge of Tom Wellinger's problems with alcohol is relevant to both Plaintiff's vicarious and direct theories of liability. In proving its vicarious liability claim, Plaintiff will be required to establish that Siemens stood to benefit from Mr. Wellinger's attendance at his

8

doctor's appointment the day of the accident. In order to establish that his attendance would result in a benefit to Siemens, Plaintiff must be able to establish that Mr. Wellinger's drinking habits previously had an adverse affect on his job performance. Proof of this fact is essential to Plaintiff's vicarious liability claim and evidence tending to establish that Mr. Wellinger's job performance suffered for reasons related to his drinking is highly relevant to establishing this fact. Ms. Olney's notes bear directly on this issue.

As to Plaintiff's direct liability claim, a critical issue before the jury will be whether Siemens knew or should have known that the conduct Wellinger was exhibiting the day of the accident was consistent with conduct he had exhibited on prior occasions when he was suspected of being intoxicated and whether Siemens was aware that Mr. Wellinger could not be entrusted with the responsibility imposed on him the day of the accident to attend his doctor's appointment. While Siemens attempts to limit the permissible use of such evidence to the "rare instance" where the same individual both observed these behaviors on prior occasions and on the day of the accident, the Court disagrees that the permissible scope of such evidence is so limited. In establishing whether Siemens "knew or should have known" of Mr. Wellinger's intoxication on the day of the accident, evidence of prior instances of behavior possibly related to Mr. Wellinger's intoxication, which were known by management or generally known among the employees, is relevant to proof of Siemens' knowledge. The Court concludes that the probative value of this evidence is not outweighed by its potential prejudicial effect. *See* Fed. R. Evid. 403; *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006) (district court has broad discretion in balancing probative value and prejudicial effect).[1]

---

[1] Because the Court concludes that the Olney Notes are admissible under Fed. R. Evid 801(d)(2)(D) and under Fed. R. Evid. 803(6), it need not address Plaintiff's alternative argument that the notes are not hearsay because they are not offered to prove the truth of the matter asserted but are offered

## IV. CONCLUSION

Accordingly, the Court DENIES Siemens' Motion *in Limine* No. 3 To Exclude Plaintiff's Proposed Trial Exhibit 133, Notes Prepared by Lorna Olney and Any Testimony from Lorna Olney. (Dkt. No. 63.)

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: November 22, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 22, 2010.

S/Denise Goodine
Case Manager

---

to prove Siemens' knowledge of Mr. Wellinger's alcohol problems. However, the Court has previously ruled that evidence of Mr. Wellinger's drinking habits and behavior at Siemens prior to May 3, 2005 is admissible for the non-hearsay purpose of proving Siemens' knowledge.