UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as Representative
of the Estate of JUDITH WEINSTEIN, as Representative
of the Estate of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL WEINSTEIN,

        Plaintiff,

vs.                                            Case No. 2:07-CV-15000
                                            Paul D. Borman
                                            United States District Judge

SIEMENS, fka UGS CORP.,
        Defendant.

_____/

OPINION AND ORDER DENYING IN PART AND GRANTING IN PART SIEMENS'
MOTION *IN LIMINE* NO. 16 TO EXCLUDE THE FARMINGTON HILLS POLICE REPORT

This matter is before the Court on Defendant Siemens, fka UGS Corp.'s ("Siemens") Motion *in Limine* No. 16 To Exclude the Farmington Hills Police Report. (Dkt. No. 76.) Plaintiff has filed a response (Dkt. No. 117) and Siemens has filed a reply (Dkt. No. 148.) The Court held a hearing on November 18, 2010. For the reasons that follow, the Court DENIES IN PART and GRANTS IN PART Siemens' motion *in limine* No. 16.

I.      **BACKGROUND**

The relevant facts underlying this case were set forth by this Court in its November 23, 2009 Opinion and Order Denying Defendant Siemens Corporation's Motion for Summary Judgment. *Weinstein v. Siemens*, 673 F. Supp. 2d 533 (E.D. Mich. 2009). This action arises from a tragic accident that occurred in the early afternoon of May 3, 2005. Thomas Wellinger, then an employee of UGS, a subsidiary of Siemens, left Siemens' offices and was scheduled to attend a doctor's

1

appointment to address his problems with alcohol abuse when he drove his Chevrolet Denali SUV at a high rate of speed and struck the vehicle driven by Plaintiff's wife, Judith Weinstein and occupied also by the Weinstein's two young sons, Alexander and Samuel. All three Weinstein family members were killed. Mr. Wellinger, who was at fault, was injured and survived. Mr. Wellinger was intoxicated at the time of the accident, with a blood alcohol level of nearly four times the legal limit. Subsequently, Mr. Wellinger pled no contest to second degree murder in Oakland County Circuit Court, and is currently incarcerated, serving a 19 to 30 year sentence.

Plaintiff's Complaint against Mr. Wellinger's employer, Siemens, was filed in the United States District Court, Eastern District of Texas, on May 1, 2007. On Siemens' motion for change of venue, the case was transferred to this District and assigned to United States District Judge Nancy G. Edmunds on November 26, 2007. On November 29, 2007, Siemens moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12. The motion was granted in part and denied in part by Judge Edmunds. (Dkt. No. 13.) *Weinstein v. UGS Corp.*, 2008 WL 1766657, No. 07-15000 (April 17, 2008) (dismissing Plaintiff's negligent retention and vice principal claims, but denying the motion to dismiss as to Plaintiff's vicarious liability and negligent supervision claims). Thereafter, due to a change in defense counsel, Judge Edmunds recused herself from the case, and the case was reassigned by the Court's blind draw system to the undersigned.

On November 23, 2009, this Court denied Siemens' motion for summary judgment, permitting Plaintiff to proceed with this case to a jury on the following two issues: (1) whether Siemens is vicariously liable for the deaths of Plaintiff's family members because "Siemens required Mr. Wellinger as a condition of his employment to attend his doctor's appointment on the day of the accident, and [] Siemens stood to derive a specific benefit from Mr. Wellinger's attendance at the

2

appointment that afternoon," and (2) whether Siemens is directly liable for the deaths of Plaintiff's family members because it "knew or should have known, before it mandated, as a condition of his further employment in his position, that Mr. Wellinger meet with his doctor that day, that Mr. Wellinger was intoxicated and 'could not be entrusted with the responsibility' it imposed upon him to go to that appointment and to report back to Mr. Arlin what the doctor recommended." (*Weinstein,* 673 F. Supp. 2d at 545, 553.)

## II.  LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999).  District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.  ANALYSIS

Following the fatal accident on May 3, 2005, the Farmington Hills Police Department conducted an extensive inquiry into the crash.  The resulting Farmington Hills Police Report included records relating to the collision, records relating to the gathering of evidence at Beaumont Hospital after the crash, records relating to the procurement of search warrants in the criminal investigation, interviews with eye-witnesses and interviews with various Siemens' employees who worked with Mr. Wellinger.  While Siemens move the Court to exclude the omnibus report, it indicates specific objections to certain portions of the report and only attaches to its motion certain portions of the report.  Siemens appears to make four separate arguments with respect to the

document that it refers to as "The Farmington Hills Police Report," that is attached to its motion *in limine* No. 16 as Exhibit B and bears Bates Nos. 141-166: (1) that the third party witness statements contained in the "report" lack trustworthiness and are inadmissible hearsay; (2) that the remainder of the "report" is irrelevant; (3) the entire "report" is unfairly prejudicial; and (4) that the entire "report" is barred by Mich. Comp. Laws § 257.624.

### A. The Public Records Exception: Fed. R. Evid. 803(C)

Plaintiff argues that the Farmington Hills Police Report is admissible as a public record under Fed. R. Evid. 803(8)(C) which provides that the following are not excluded by the hearsay rule: "[r]ecords, reports, statements, or data compilations, in any form, setting forth . . . in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." F. R. Evid. 803(8)(C).[1] The public records exception is based on the notion that public officials will perform their duties properly and lack a motive to falsify. 5 Wigmore, Evidence § 1632 at 618-621 (1974 ed.) "A police report is, in our judgment, a 'public record and report' within the meaning of the first part of Rule 803(8)." The Sixth Circuit has long recognized that police reports come within the public record exception. *See Baker v. Elcona Homes Corp*., 588 F.2d 551, 556 (6th Cir. 1978) (holding that the direct observations and recorded data of a police officer in the course of his investigation which are placed in the report are clearly matter observed pursuant to duty imposed by law under Rule 803(8)(B) and therefore not inadmissible under the hearsay rule). Further the fact that the matters reported may relate to disputed evidence does not affect their admissibility under

---

[1] Neither party has provided the Court with a complete copy of the Farmington Hills Police Report. The Court, in this Order, rules only on the exclusion of those portions of the report attached to Siemens' motion as Exhibit B.

803(8)(C). "It is also clear from the construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those which are made by a preparer of the report from disputed evidence, as contrasted to those facts which are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report' called for under Rule 803(8)(B)." *Id*. at 557-558.

Siemens argues that the Farmington Hills Police Report, attached to its motion as Exhibit B, is inadmissible hearsay and does not fall within the public records exception. Siemens does not appear to question that Farmington Hills Police Report is a public record and falls within the scope of Rule 803(8)(C). Rather, Siemens argues that the report falls outside the exclusion because it contains inadmissible hearsay. Specifically, Siemens seeks to exclude the investigating officers' narrative reports concerning the murder investigation and their transcribed notes of their interviews with Siemens employees. Siemens argues that a police report is only admissible if it constitutes a statement of fact, as distinguished from an opinion or conclusion, and represents the personal observations of the reporter, not a relaying of what someone else told him. (Def.'s MIL No. 16, Dkt. No. 76, 4.) This statement fails to address more recent Sixth Circuit opinions which clearly establish that "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)." *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009). Discussing *Combs v. Wilkinson*, 315 F.3d 548, 555-556 (6th Cir. 2002), the court in *CareSource* recognized the inherent implausibility of imposing a personal knowledge requirement on Rule 803(8) reports because, by their nature, such reports are unlikely to be based on the preparer's personal knowledge: "In fact, it is unlikely that the report's author(s) will have any personal knowledge of the incidents investigated." *Id*. In *Combs*, the Sixth Circuit expressly rejected the first-hand knowledge requirement and reversed the trial court's ruling excluding a committee report, prepared following

an investigation of a death row inmate disturbance at a prison, which was based on "123 interviews and inmate incident reports, as well as the investigative report completed by the Ohio Highway State Patrol." 315 F.3d at 555. Citing McCormick's Treatise on Evidence, the court noted that "[i]nvestigative reports 'embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge.'" *Id.* (citing McCormick on Evidence § 296 (5th ed. 1990)). Contrary to Siemens' assertion to the contrary, the report in *Combs* did rely on multiple third-party statements. (Def.'s Reply on MIL 16, Dkt. No. 148, 2 n. 1.)

Nor is Siemens' correct in asserting that an officer's statement in a police report is "only admissible if it constituted a statement of fact, as distinguished from an opinion or a conclusion." (Def.'s MIL 16, Dkt. No. 76, 4.) This issue was clearly and expressly decided by the Supreme Court in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) and the Sixth Circuit has embraced this holding in numerous decisions. *See e.g. Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) ("Opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception.") (quoting *Beech Aircraft*, 488 U.S. at 168-69.)[2]

Thus, neither a lack of personal knowledge, nor the expression of conclusions and opinions will require exclusion an 803(8) report. Such reports are presumed to be admissible and the burden

---

[2] In support of its statement of the law on these two critical points, Siemens relies on *Baker, supra,* which has been clearly repudiated on this point of law by *Combs* and its progeny. Siemens also relies on *Phillips v. Northwest Airlines Corp.*, 88 F. App'x 862, 864 (6th Cir. 2004), an unpublished decision which itself relies on pre-*Combs* decisions, fails to discuss *Combs* and which, in any event, announced this standard as the "general rule." Siemens further relies on additional Sixth Circuit law, also relied on by the court in *Phillips*, which preceded *Combs*, *i.e. Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) and *Dallas v. Mavis Forwarding Co., Inc. v. Stegall*, 659 F.2d 721, 722 (6th Cir. 1981). To the extent these cases either require first hand knowledge of the preparer of the report or disallow the preparer's opinions and conclusions, they are contrary to Supreme Court precedent and subsequent Sixth Circuit case law on these points.

is on the party opposing their admission to demonstrate that they lack trustworthiness. *Bank of Lexington*, 959 F.2d at 616 ("the Advisory Committee notes that the rule [803(8)] 'assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.' In light of this presumption of admissibility, the party opposing the admission of the report must prove that the report is not trustworthy.") (quoting *Baker,* 588 F.2d at 558). The Sixth Circuit recently summarized the law on these issues in *CareSource, supra* where the court explained that the ultimate touchstone of admissibility of such reports is trustworthiness:

> [A]s a general rule, a hearsay "declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with the requirement of firsthand knowledge." Advisory Committee's Note to 1972 Proposed Rules, Rule 803; see also *United States v. Lanci*, 669 F.2d 391, 395 (6th Cir.1982) (quoting advisory committee note and holding that hearsay exception of statement against interest requires that the declarant had personal knowledge); *cf*. Fed.R.Evid. 602. But the personal knowledge requirement does not extend to official reports admissible under Rule 803(8). *Combs v. Wilkinson*, 315 F.3d 548, 555-56 (6th Cir.2002) (rejecting argument that an official report of a prison disturbance must be based on first-hand knowledge of an investigating committee, which "based its report on 123 interviews and numerous documents, including all staff and inmate incident reports, as well as the investigative report completed by the Ohio Highway State Patrol"). In fact, it is unlikely that the report's author(s) will have any personal knowledge of the incidents investigated. Therefore, lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8). Exclusion of an official report is warranted only if the court finds that "the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8); *see also* 2 McCormick On Evid. § 296 (6th ed.) ("As the name indicates, these reports embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions. Nevertheless, the nature and trustworthiness of the information relied upon, including its hearsay nature, is important in determining the admissibility of the report." (footnotes omitted)).

576 F.3d at 562-563. *See also Clark v. Clabaugh*, 20 F.3d 1290, 1294 (3d Cir. 1994) (admitting a Pennsylvania State Police Report under Fed. R. Evid. 803(8)(C) which was "authored by an investigator who did not have personal knowledge, and which contain[ed] opinion based on

7

hearsay," finding that "the district court's implicit finding that no special bias impeded a fair investigation or entered into the preparation of the PSP Report was not clearly erroneous," and finding that "the bias of those interviewed does not render the PSP Report itself inherently untrustworthy, and such bias cannot be imputed to the investigating officers.").

In the Sixth Circuit, to determine whether the report is sufficiently trustworthy, courts have historically considered four critical factors, but these four factors are not an exhaustive list. Again, the court in *Caresource* summarized the trustworthiness inquiry:

> In this Circuit, "[t]o determine whether a report is trustworthy, courts consider the following four factors: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir.2009) (citing *Bank of Lexington*, 959 F.2d at 616-17). "This list of factors is not exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." *In re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir.1982) (citations omitted).
>
> "The trustworthiness of a factual finding is often a function of the trustworthiness of the information upon which the finding is based." *Ibid*. (citations omitted).

576 F.3d at 563.

Siemens does not appear to challenge, and there can be no real question, that the officers who prepared the Farmington Hills Police Report each possessed the requisite skill and experience necessary to conduct the investigations. Although no hearings were held, the Rule makes no reference to a hearing and this suggested factor for consideration "is not the *sine qua non* of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present." *Baker*, 588 F.2d at 558. There is no hint that any of the Officers was biased or had improper motives in preparing the report. Thus, the Court must evaluate the trustworthiness of the underlying

8

information relied on by the Officers in preparing the report.

Siemens argues that the third party witness statements contained in the report lack trustworthiness and are inadmissible hearsay.[3] While 803(8) reports may rely on sources of information other than the preparer's own personal observations, exclusion will nonetheless be warranted if those sources themselves indicate a lack of trustworthiness. *CareSource,* 576 F.3d at 563. Siemens is correct that such a report cannot rely on "a collection of secondhand observations" that amount to nothing more than "the hearsay statements of biased witnesses." *Dortch v. Fowler*, 588 F.3d 396, 404 (6th Cir. 2010). But this Court has already concluded that the Siemens employees were either authorized by their employer to speak on the subject of Mr. Wellinger's conduct at Siemens and related job performance issues or were acting within the scope of their employment when they gave their statements to the Farmington Hills Police and therefore their statements are admissible in their entirety as party admissions under Fed. R. Evid. 801(d)(2)(C) and (D). (*See* Opinion and Order Denying Siemens' MIL No. 4-15.) Therefore, the third party witness statements contained in the report are not hearsay and are admissible under 803(8).[4] *See U.S. v. Smith*, 521 F.2d

---

[3] The Court concludes that, with the exception of the statement of an anonymous caller which is the subject of a separate motion *in limine*, the portions of Siemens' Exhibit B other than the Siemens witness statements satisfy the requirements of Fed. R. Evid. 803(8) as they report or are based on the factual findings of the investigative officers and present no issues of trustworthiness. The Court addresses the statement of Thomas Wellinger made to officers regarding alcohol he consumed the morning of the accident in its Opinion and Order on Siemens' MIL No. 18 to Exclude the Hughes Affidavit at pp. 10-11.

[4] Even assuming that the third party witness statements had not already been determined to be non-hearsay evidence, the Court would be inclined to admit them as part of the report because of their inherent trustworthiness. These statements were given by employees of Siemens in connection with a police investigation in the presence of their employer's corporate legal counsel. If these witnesses had any potential for bias it would have favored Siemens, who now seeks to exclude the statements. The Court concludes that these statements, particularly when offered against Siemens, are inherently trustworthy. Even if the Court did conclude that they lacked trustworthiness, this would not result

957, 964 (D.C. Cir. 1975) ("But while such hearsay in a business record is not admissible under the business record exception, the hearsay is admissible if it falls within any other exception. *See e. g.*, C. McCormick, supra, s 286 at 603 n. 12, & s 290 at 611, and cases cited therein.")

### B. The Relevance of the Report and Its Potential Prejudicial Effect

The Sixth Circuit has adopted a very liberal standard for the determination of relevancy. *Dortch,* 588 F.3d at 400 ("The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence. Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed.R.Evid. 401.") (citing *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *Whittington*, 455 F.3d at 738-739 (internal quotation marks and citation omitted).

The Court has already determined that evidence tending to establish Siemens' knowledge of Tom Wellinger's history of alcohol problems and tending to show that they should have known of his intoxication the day of the accident is highly relevant to both Plaintiff's vicarious and direct theories of liability. In proving its vicarious liability claim, Plaintiff will be required to establish that Siemens stood to benefit from Mr. Wellinger's attendance at his doctor's appointment the day of the accident. In order to establish that his attendance would result in a benefit to Siemens, Plaintiff must be able to establish that Mr. Wellinger's drinking habits previously had an adverse affect on his job performance. Proof of this fact is absolutely crucial to Plaintiff's vicarious liability

---

in a finding that the entire report was inadmissible, but only that those portions failing to meet the requirements of Rule 803(8) would be inadmissible. *Miller*, 35 F.3d at 11.

claim and evidence tending to establish that Mr. Wellinger's job performance suffered as a result of his intoxication is highly relevant to establishing this fact. The witness statements contained in the police report bear directly on this issue.

As to Plaintiff's direct liability claim, a critical issue before the jury will be whether Siemens knew or should have known that the conduct Wellinger was exhibiting the day of the accident was consistent with conduct he had exhibited on prior occasions when he was suspected of being intoxicated whether Siemens should have entrusted Mr. Wellinger with the responsibility it imposed on him that day to attend his doctor's appointment. While Siemens attempts to limit the permissible use of such evidence to the "rare instance" where the same individual both observed these behaviors on prior occasions and on the day of the accident, the Court disagrees that the permissible scope of such evidence is so limited. In establishing whether UGS "knew or should have known" of Mr. Wellinger's intoxication on the day of the accident, evidence of prior instances of drunken behavior, which were known by management or generally known among the employees, are relevant to proof of Siemens' knowledge. Also relevant to Plaintiff's direct liability claim will be evidence establishing Tom Wellinger's actual intoxication or use of alcohol the day of the accident. The fact that the investigators were never able to establish exactly where or when Mr. Wellinger drank that day, a point that Siemens continues to emphasize, has no bearing on the issue of whether Siemens was or should have been aware that Mr. Wellinger was exhibiting signs of intoxication on the day of the accident. Thus, any evidence contained in the report that "has the slightest probative worth" any of these issues is relevant.

As this Court has already determined, the third party witness statements are relevant. Siemens also argues that portions of the report contained at Bates Nos. 141-146 and 147-149 are not

11

relevant. With the exception of Bates Nos. 148-149, which relate to a laptop and tan carry bag recovered from Mr. Wellinger's vehicle, each of the other portions of the report meet the liberal relevance standard because they relate directly either to Mr. Wellinger's state of intoxication on the day of the accident, to his historical behaviors at Siemens, his general issues with alcohol abuse or to the investigation of Siemens and its employees. Thus, they are not inadmissible for lack of relevance. Finally, this Court has also concluded that the probative value of this evidence is not outweighed by its potential prejudicial effect. *See* Fed. R. Evid. 403; *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006) (district court has broad discretion in balancing probative value and prejudicial effect).

### C. The Applicability of Mich. Comp. Laws § 257.624

Siemens argues that admission of the Farmington Hills Police Report as identified in Exhibit B to its MIL No. 16, is barred by Mich. Comp. Laws § 257.624 which provides as follows:

> Sec. 624. (1) A report required by this chapter shall not be available for use in a court action, but a report shall be for the purpose of furnishing statistical information regarding the number and cause of accidents.
>
> (2) The office of highway safety planning may authorize scientific studies and research for the reduction of death, injury, and property losses. All information, records of interviews, written reports, statements, notes, memoranda, or other data collected pursuant to the scientific studies and research conducted by the state, or by other persons, agencies, or organizations authorized by the office of highway safety planning shall be used solely for the purpose of medical or scientific research and shall not disclose the name or identity of a person unless the person authorizes, in writing, the use of his or her name or identity. If a subject of the research study is deceased, the executor or heir of the deceased person may authorize, in writing, the disclosure of the deceased's name or identity. The furnishing of information to the office of highway safety planning or to a representative of an authorized study or research project shall not subject a person, hospital, sanitarium, rest home, nursing home, or other person or agency furnishing the information to any action for damages or other relief. The information, records, reports, statements, notes, memoranda, or other data shall not be admissible as evidence in a court or before any other tribunal, board, agency, or person. A person participating in an authorized

12

study or research project shall not disclose, directly or indirectly, the information so obtained except in strict conformity with the research project.

(3) A person who discloses information in violation of subsection (2) is guilty of a misdemeanor, punishable by a fine of not less than $50.00.

Mich. Comp. Laws § 257.624.

The Michigan Supreme Court has held that this statutory provision "is confined to the reports mandated by the statute, and has no effect on the rules of evidence regarding the police officer's personal notes or the routine report, usually entitled 'Motor Vehicle Accident Report,' that the officer takes at the scene of the accident." *Moncrief v. City of Detroit*, 398 Mich. 181, 191 (1976). Siemens relies on *Gath v. Bay Auto Auction LLC*, No. 266100, 2006 WL 709499, * 3 n.3 (Mich. App. March 21, 2006) (unpublished) to support its contention that this Court should exclude the entirety of the Farmington Hills Police Report (much of which the Court has not seen) based on this statutory section *Gath*, however, offers little in the way of explanation of the possible applications of Mich. Comp. Laws § 257.624 and the court there actually declined to decide whether this statutory section applied to the report in the case before it. Further, *Gath* cites as authority on this issue *Webster v. Central Paving Co.*, 51 Mich. App. 62 (1974), in which the nature of the report at issue is not entirely clear and which was repudiated on this point, in any event, by the Michigan Supreme Court decision in *Moncrief*. Siemens also relies on *Williams v. City of Pontiac*, No. 297263, 1999 WL 33437839, * 2 (Mich. App. Aug. 20, 1999), which is equally non-instructive. The court in *Williams* concludes that "[t]he police report including the other driver's statement concerning the light was inadmissible under M.C.L. § 257.624," but gives no indication as to why that statutory section applied or why it mandated exclusion of the report.

Although neither Siemens nor Plaintiff adequately explains the significance of Mich. Comp.

Laws § 257.624 to this case, it appears to the Court that Mich. Comp. Laws § 257.624 is inapplicable. Cases interpreting Mich. Comp. Laws § 257.624 indicate that the statute only applies to certain reports required by statute to be made by drivers of vehicles involved in accidents and garage owners who work on damaged vehicles and has no application to the actual accident report authored by the investigating officer. The statements referred to in section 257.624, i.e. those "required by this chapter," are reports required under Mich. Comp. Laws § 257.620 - .623, which mandate that individuals involved in accidents causing physical damage or death, and garage keepers who work on damaged vehicles, make reports of such incidents to their local police. The police, in turn, are required to forward such reports to the director of the department of state on prescribed forms. These forms are then used to compile statistical information. Because these reports often contain incriminating statements of individuals involved in accidents, section 257.624 prohibits their use in court actions. These sections appear to have no bearing on the admissibility of the category of investigative report at issue in this case. The applicability of the statute was explained by the Michigan Supreme Court in *Duncan v. Strating*, 357 Mich. 654, 662-663 (1959):

> Shortly after the accident occurred a deputy sheriff of the county, who had received a radio call with reference to it, went to the scene and made an investigation of the situation. He talked with plaintiff and with Mrs. Duncan, who was a witness on the trial, making notes of what he observed and of statements made to him.
>
> *       *       *
>
> It was the position of counsel for plaintiff on the trial that the notes made by the deputy and microfilmed could not be used for any purpose. Apparently the objection rested on the theory that the microfilm was a statutory report intended for the furnishing of statistical information and declared not available for use in any court action by section 624 of the motor vehicle code of 1949. Such was not the situation. We are not concerned with a report made by a party to an accident in which car damage or personal injury has occurred, but, rather, with the notes made by an investigating officer, not required by statute or otherwise, and used by such officer in testifying with reference to his observations and related matters. The question here

14

at issue was considered at some length in *Wallace v. Skrzycki*, 338 Mich. 164, 61 N.W.2d 106 [1953], and in prior decisions there cited.

In *Carlson v. Brunette*, 339 Mich. 188 [1954], 63 N.W.2d 428, it was held:

> 'The statutory bar to use in any court action of reports required in the motor vehicle code to be made with reference to cars involved in accidents applies to reports made by drivers of vehicles involved and garage keepers under certain circumstances and has no application to notes or to reports made by investigating police officers of physical facts they have observed and admissions made to them by drivers of motor vehicles at the scene of the accident for use either at evidence or refreshing a witness's recollection (P.A.1949, No. 300, § 624).'-Syllabus 2.

The notes in question in this case, made by the deputy sheriff and used on the trial in connection with his testimony, were not subject to exclusion under the statutory provision above cited. The case was properly tried and the issues submitted to the jury in a comprehensive charge fairly covering the matters in controversy. We conclude that appellant's claims of error are not well-founded, and the judgment is affirmed.

357 Mich. at 662-663. *See also Willmore v. Hertz Corp.*, 322 F. Supp. 444, 447 (W.D. Mich. 1969) (holding that Michigan courts have given a narrow application to § 624: "[S]ince the report here was compiled solely by the investigating officers and not by a 'driver' under § 622, it does not fall within the scope of the privilege provided in § 624.") These cases comport with the Michigan Supreme Court's statement in *Moncrief* that the statutory proscription is confined to this very limited category of "statutorily mandated" reports. Siemens has not established that any portion of the Farmington Hills Police Report constitutes such a report. The Court concludes that Mich. Comp. Laws § 257.624 does not require exclusion of the Farmington Hills Police Report attached as Exhibit B to Siemens' motion *in limine* No. 16.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Siemens motion *in limine* No. 16 as to those

pages of Exhibit B bearing Bates Nos. 148-149 based on lack of relevance. The Court DENIES Siemens' motion *in limine* No. 16 as to the remainder of the Farmington Hills Police Report (Dkt. No. 76).

IT IS SO ORDERED.

                              S/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE

Dated: November 22, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 22, 2010.

                              S/Denise Goodine
                              Case Manager