UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WEINSTEIN, Individually and as Representative
of the Estate of JUDITH WEINSTEIN, as Representative
of the Estate of ALEXANDER WEINSTEIN, and as
Representative of the Estate of SAMUEL WEINSTEIN,

    Plaintiff,

vs.    Case No. 2:07-CV-15000
    Paul D. Borman
    United States District Judge

SIEMENS, fka UGS CORP.,
    Defendant.

_____/

<u>OPINION AND ORDER DENYING SIEMENS' MOTIONS *IN LIMINE* NOS. 18, 19 AND 20 (DKT. NOS. 78, 79 AND 80) TO EXCLUDE THE AFFIDAVITS AND NOTES OF THE INVESTIGATING OFFICERS FROM THE FARMINGTON HILLS POLICE REPORT</u>

This matter is before the Court on Defendant Siemens, fka UGS Corp.'s ("Siemens") Motions *in Limine* Nos. 18, 19 and 20 To Exclude the Affidavits and Notes of the investigating officers from the Farmington Hills Police Department. (Dkt. Nos. 78, 79 and 80.) Plaintiff has filed responses (Dkt. Nos. 110, 111 and 112) and Siemens has filed replies (Dkt. Nos. 128, 129 and 130.) The Court held a hearing on November 18, 2010. For the reasons that follow, the Court DENIES Siemens' motions *in limine* Nos. 18, 19 and 20.

I.  **BACKGROUND**

The relevant facts underlying this case were set forth by this Court in its November 23, 2009 Opinion and Order Denying Defendant Siemens Corporation's Motion for Summary Judgment. *Weinstein v. Siemens*, 673 F. Supp. 2d 533 (E.D. Mich. 2009). This action arises from a tragic

1

accident that occurred in the early afternoon of May 3, 2005. Thomas Wellinger, then an employee of UGS, a subsidiary of Siemens, left Siemens' offices and was scheduled to attend a doctor's appointment to address his problems with alcohol abuse when he drove his Chevrolet Denali SUV at a high rate of speed and struck the vehicle driven by Plaintiff's wife, Judith Weinstein and occupied also by the Weinstein's two young sons, Alexander and Samuel. All three Weinstein family members were killed. Mr. Wellinger, who was at fault, was injured and survived. Mr. Wellinger was intoxicated at the time of the accident, with a blood alcohol level of nearly four times the legal limit. Subsequently, Mr. Wellinger pled no contest to second degree murder in Oakland County Circuit Court, and is currently incarcerated, serving a 19 to 30 year sentence.

Plaintiff's Complaint against Mr. Wellinger's employer, Siemens, was filed in the United States District Court, Eastern District of Texas, on May 1, 2007. On Siemens' motion for change of venue, the case was transferred to this District and assigned to United States District Judge Nancy G. Edmunds on November 26, 2007. On November 29, 2007, Siemens moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12. The motion was granted in part and denied in part by Judge Edmunds. (Dkt. No. 13.) *Weinstein v. UGS Corp.*, 2008 WL 1766657, No. 07-15000 (April 17, 2008) (dismissing Plaintiff's negligent retention and vice principal claims, but denying the motion to dismiss as to Plaintiff's vicarious liability and negligent supervision claims). Thereafter, due to a change in defense counsel, Judge Edmunds recused herself from the case, and the case was reassigned by the Court's blind draw system to the undersigned.

On November 23, 2009, this Court denied Siemens' motion for summary judgment, permitting Plaintiff to proceed with this case to a jury on the following two issues: (1) whether Siemens is vicariously liable for the deaths of Plaintiff's family members because "Siemens required

2

Mr. Wellinger as a condition of his employment to attend his doctor's appointment on the day of the accident, and [] Siemens stood to derive a specific benefit from Mr. Wellinger's attendance at the appointment that afternoon," and (2) whether Siemens is directly liable for the deaths of Plaintiff's family members because it "knew or should have known, before it mandated, as a condition of his further employment in his position, that Mr. Wellinger meet with his doctor that day, that Mr. Wellinger was intoxicated and 'could not be entrusted with the responsibility' it imposed upon him to go to that appointment and to report back to Mr. Arlin what the doctor recommended." (*Weinstein,* 673 F. Supp. 2d at 545, 553.)

## II. LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III. ANALYSIS

Plaintiff seeks to introduce (1) the affidavit of Detective Gregory Hughes, a police officer with the Farmington Hills Police Department, which was sworn in support of a search warrant for the cell phone records of Thomas Wellinger in connection with the criminal investigation of Mr. Wellinger (Plaintiff's Proposed Trial Exhibit 151) (Def.'s MIL No. 18, Dkt. No. 78, Ex. A); (2) the affidavit of Traffic Investigator Andrew Plemmons, a police officer with the Farmington Hills Police Department, which was sworn in support of a search warrant for Thomas Wellinger's Dell computer

3

in connection with the criminal investigation of Mr. Wellinger (Plaintiff's Proposed Trial Exhibit 134) (Def.'s MIL No. 19, Dkt. No. 79, Ex. A); and (3) the handwritten notes of Officer James Bretz taken during interviews of several Siemens employees in connection with the criminal investigation of Thomas Wellinger (Plaintiff's Proposed Trial Exhibit 150) (Def.'s MIL No. 20, Dkt. No. 80, Ex. A).[1]

Siemens seeks to have these affidavits and notes excluded on the basis that they are inadmissible hearsay, are not relevant and unfairly prejudicial. Plaintiff responds that the affidavits and notes are relevant and are admissible under Fed. R. Evid. 803(8)(B) and (C) and that their probative value is not outweighed by their potential prejudicial effect. Fed. R. Evid. 403.

### A.    Admissibility of the Affidavits and Notes under Fed. R. Evid. 803(8)

Plaintiff argues that the Hughes and Plemmons affidavits, and the Bretz notes, all of which are contained in the Farmington Hills Police Report, are admissible as public records under Fed. R. Evid. 803(8)(B) and (C) which provide that the following are not excluded by the hearsay rule: "[r]ecords, reports, statements, or data compilations, in any form, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, . . ., or (C) in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." F. R. Evid. 803(8)(B)(C). The public records exception is based on the notion that public officials will perform their duties properly and lack a motive to falsify. 5 Wigmore, Evidence § 1632 at 618-621 (1974 ed.) The Sixth Circuit has long recognized that police reports come within

---

[1] While Siemens challenges the admissibility of each of these proposed exhibits in a separate motion *in limine*, the Court addresses them collectively in this Opinion and Order as the legal authority and argument presented by both sides in their briefs is largely the same as to each exhibit.

the public record exception. *See Baker v. Elcona Homes Corp.*, 588 F.2d 551, 556 (6th Cir. 1978) (holding that the direct observations and recorded data of a police officer in the course of his investigation which are placed in the report are clearly matter observed pursuant to duty imposed by law under Rule 803(8)(B) and therefore not inadmissible under the hearsay rule). Further the fact that the matters reported may relate to disputed evidence does not affect their admissibility under the Rule. "It is also clear from the construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those which are made by a preparer of the report from disputed evidence, as contrasted to those facts which are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report' called for under Rule 803(8)(B)." *Id*. at 557-558.

Siemens argues that the Plemmons and Hughes affidavits and the Bretz notes are inadmissible hearsay and do not fall within the public records exception. Siemens argues that the affidavits and notes fall outside the exclusion because they contain inadmissible hearsay. Siemens argues that the affidavits and notes are only admissible if they contain statements of fact, as distinguished from opinions or conclusions, and represent the personal observations of the reporter, not a relaying of what someone else told him. (*See, e.g.,* Def.'s MIL No. 19, Dkt. No. 76, 6-7.) As this Court discussed in its Opinion and Order on Siemens' MIL No. 16 seeking to exclude portions of the Farmington Hills Police Report, this statement of the law fails to address several Sixth Circuit opinions which clearly establish that "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)." *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009). The court in *CareSource*, citing the reasoning of the Sixth Circuit in *Combs v. Wilkinson*, 315 F.3d 548, 555-556 (6th Cir. 2002), recognized the inherent implausibility of imposing a personal knowledge requirement on Rule 803(8) reports because, by their nature, such

5

reports are unlikely to be based on the preparer's personal knowledge: "In fact, it is unlikely that the report's author(s) will have any personal knowledge of the incidents investigated." *Id.* In *Combs*, the Sixth Circuit expressly rejected the first-hand knowledge requirement and reversed the trial court's ruling excluding a committee report, prepared following an investigation of a death row inmate disturbance at a prison, which was based on "123 interviews and inmate incident reports, as well as the investigative report completed by the Ohio Highway State Patrol." 315 F.3d at 555. Citing McCormick's Treatise on Evidence, the court noted that "[i]nvestigative reports 'embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge.'" *Id.* (citing McCormick on Evidence § 296 (5th ed. 1990)). Contrary to Siemens' assertion to the contrary, *Combs* did involve the preparer's reliance on third-party statements. *See also Clark v. Claybaugh*, 20 F.3d 1290, 1294 (3d Cir. 1994) ("We are quite satisfied that the district court exercised sound discretion in admitting for consideration the [Pennsylvania Police Report], which is indeed unsworn, authored by an investigator who did not have personal knowledge, and which contains opinion based on hearsay.")

Nor is Siemens' correct in asserting that an officer's statement in a police report is "only admissible if it constituted a statement of fact, as distinguished from an opinion or a conclusion." (Def.'s MIL 16, Dkt. No. 76, 4.) This issue was clearly and expressly decided by the Supreme Court in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) and the Sixth Circuit has embraced this holding in numerous decisions. *See e.g. Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) ("Opinions, conclusions, and evaluations, as well as facts,

6

fall within the Rule 803(8)(C) exception.") (quoting *Beech Aircraft*, 488 U.S. at 168-69.)[2]

Thus, neither a lack of personal knowledge, nor the expression of conclusions and opinions, will require exclusion of an 803(8) report. Such reports are presumed to be admissible and the burden is on the party opposing their admission to demonstrate that they lack trustworthiness. *Bank of Lexington*, 959 F.2d at 616 ("the Advisory Committee notes that the rule [803(8)] 'assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.' In light of this presumption of admissibility, the party opposing the admission of the report must prove that the report is not trustworthy.") (quoting *Baker,* 588 F.2d at 558). The Sixth Circuit recently summarized the law on these issues in *CareSource, supra* where the court explained that the ultimate touchstone of admissibility of such reports is trustworthiness:

> [A]s a general rule, a hearsay "declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with the requirement of firsthand knowledge." Advisory Committee's Note to 1972 Proposed Rules, Rule 803; see also *United States v. Lanci*, 669 F.2d 391, 395 (6th Cir.1982) (quoting advisory committee note and holding that hearsay exception of statement against interest requires that the declarant had personal knowledge); *cf*. Fed.R.Evid. 602. But the personal knowledge requirement does not extend to official reports admissible under Rule 803(8). *Combs v. Wilkinson*, 315 F.3d 548, 555-56 (6th Cir.2002) (rejecting argument that an official report of a prison disturbance must be based on first-hand knowledge of investigating committee, which "based its report on 123 interviews and numerous documents, including all staff and inmate incident reports, as well as the investigative report completed by the Ohio Highway State Patrol"). In fact, it is unlikely that the report's

---

[2] In support of its statement of the law on these two critical points, Siemens relies on *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 556 (6th Cir. 1978) which has been clearly repudiated on this particular point of law by *Combs* and its progeny and *Phillips v. Northwest Airlines Corp.*, 88 F. App'x 862, 864 (6th Cir. 2004), an unpublished decision which itself relies on pre-*Combs* decisions, fails to discuss *Combs* and which, in any event, announced this standard as the "general rule." Siemens further relies on additional Sixth Circuit law, also relied on by the court in *Phillips*, which preceded *Combs*, *i.e. Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) and *Dallas v. Mavis Forwarding Co., Inc. v. Stegall*, 659 F.2d 721, 722 (6th Cir. 1981). To the extent these cases either require first hand knowledge of the preparer of the report or disallow the preparer's opinions and conclusions, they are contrary to subsequent Sixth Circuit case law on these points.

author(s) will have any personal knowledge of the incidents investigated. Therefore, lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8). Exclusion of an official report is warranted only if the court finds that "the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8); *see also* 2 McCormick On Evid. § 296 (6th ed.) ("As the name indicates, these reports embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions. Nevertheless, the nature and trustworthiness of the information relied upon, including its hearsay nature, is important in determining the admissibility of the report." (footnotes omitted)).

576 F.3d at 562-563. *See also Clark*, 20 F.3d at 1294 (3d Cir. 1994) (admitting a Pennsylvania State Police Report under 803(8)(C) which was "authored by an investigator who did not have personal knowledge, and which contain[ed] opinion based on hearsay," finding that "the district court's implicit finding that no special bias impeded a fair investigation or entered into the preparation of the PSP Report was not clearly erroneous," and finding that "the bias of those interviewed does not render the PSP Report itself inherently untrustworthy, and such bias cannot be imputed to the investigating officers.").

In the Sixth Circuit, to determine whether the report is sufficiently trustworthy, courts have historically considered four critical factors, but these four factors are not an exhaustive list. Again, the court in *CareSource* summarized the trustworthiness inquiry:

> In this Circuit, "[t]o determine whether a report is trustworthy, courts consider the following four factors: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir.2009) (citing *Bank of Lexington*, 959 F.2d at 616-17). "This list of factors is not exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." *In re Complaint of Paducah Towing Co., Inc*., 692 F.2d 412, 420 (6th Cir.1982) (citations omitted).
>
> "The trustworthiness of a factual finding is often a function of the trustworthiness of the information upon which the finding is based." *Ibid*. (citations omitted).

8

576 F.3d at 563.

Siemens does not appear to challenge, and there can be no real question, that the affidavits and notes were timely (all prepared within weeks of the fatal crash) and that the officers each possessed the requisite skill and experience necessary to conduct the investigations, request the affidavits and prepare the notes. Although no hearings were held, the Rule makes no reference to a hearing and this suggested factor for consideration "is not the *sine qua non* of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present." *Baker*, 588 F.2d at 558. There is no hint that any of the officers was biased or had improper motives in preparing the report. Thus, the Court must evaluate the trustworthiness of the underlying information relied on by the officers in preparing the affidavits and notes.

The Court notes at the outset two general observations applicable to both affidavits and Officer Bretz's notes: (1) To the extent that the Officers rely on information provided by each other, this does not warrant exclusion under 803(8). *See Dortch*, 588 F.3d at 404 (permitting supervising officer's report which was based "primarily on his team's own observations."). Officers Plemmons, Hughes and Bretz were all investigating officers assigned to investigate the fatal crash and were part of the same "team," authorized to conduct separate facets of the investigation. They are permitted to rely on each others' knowledge unless the information provided to them itself lacked the requisite indicia of trustworthiness; and (2) to the extent that the affidavits or notes relied on information provided by the Siemens witnesses, the exhibits are not deemed inadmissible on this basis, because the Court has already ruled that the Siemens witness statements are admissions of party opponents under Fed. R. Evid. 801(d)(2)(C) and (D) and are therefore not hearsay. *See Baker,* 588 F.2d at 559 (holding that a statement of a driver that was appended to the police report, which would not

9

otherwise have been admissible under Rule 803(8), was properly admitted where the statement was admissible separately under Fed. R. Evid. 801(d)(1)(B) and therefore not hearsay). With these general observations in mind, the Court turns to Siemens' specific objections to the affidavits and the notes.

1. **The Hughes Affidavit**

An arrest affidavit fits within the 803(8)(C) exception to the hearsay rule if it does not otherwise indicate a lack of trustworthiness. *State Farm Mutual Auto Ins. Co. v. Brown,* 767 F. Supp. 1151, 1153 (S.D. Fla. 1991) (citing *Beech Aircraft* and *Baker*, *supra*). Siemens argues that the Hughes Affidavit lacks trustworthiness because Tom Wellinger was intoxicated at the time he spoke with Officers at Beaumont Hospital. Siemens relies solely on *United States v. Franklin*, 415 F.3d 537, 548-549 (6th Cir. 2005) to support this argument but misrepresents the court's ruling in *Franklin*. Siemens states in its reply brief that "In *Franklin*, the court, in considering the admissibility of a hearsay statement under Fed. R. Evid. Rule 807, found the statements inadmissible because "**even in light of the circumstances tending to support a finding of trustworthiness,** this Court **should find error** because Clarke and Wright were **drunk** when the pertinent conversations occurred and Wright was drunk when he first recounted the statements before the grand jury." (Def.'s Reply on MIL No. 18, Dkt. No. 128, 5) (emphasis in original). First, the court in *Franklin* in fact upheld the admissibility of the statements and specifically rejected the argument that the declarant was drunk:

> Franklin finally submits that even in light of the circumstances tending to support a finding of trustworthiness, this Court should find error because Clarke and Wright were drunk when the pertinent conversations occurred and Wright was drunk when he first recounted the statements before the grand jury. This argument is not persuasive. First, Franklin offers no proof that Clarke and Wright were in fact intoxicated at the time the conversations occurred, let alone to such an extent that the statements should have been excluded as untrustworthy.

10

415 F.3d at 548-549. Thus, contrary to Siemens' representation, *Franklin* does not stand for the broad proposition that statements from an intoxicated declarant are inadmissible. An inference could be drawn from the court's discussion of the issue that had there been evidence of sufficient intoxication, the court may have considered this as bearing on trustworthiness, but this was not the court's ruling.

This Court notes that in arraigning Mr. Wellinger at the hospital that afternoon, Judge Marla Parker specifically found that Mr. Wellinger understood the charges against him, that he was aware of his surroundings and competent to accept the charges against him. (Def.'s MIL No. 16, Dkt. No. 76, Ex. B, p. 5, Narrative Report.) Siemens has provided no evidence that at the time Mr. Wellinger spoke with Officer Hughes he was intoxicated to such an extent that his statements to Officer Hughes should be excluded as untrustworthy. Siemens will have an opportunity to challenge the reliability of the Hughes' Affidavit on cross-examination. *See Dortch*, 588 F.3d at 403, 404 (holding that "the district court did not err in admitting [the officer's report] and permitting Dortch to raise any issues with the report or the officer's conduct via cross examination.")[3]

Siemens also argues that there is great inconsistency in Officer Hughes' affidavit, that Officer Hughes contradicts himself in the affidavit and that Tom Wellinger makes some demonstrably false statements. Siemens does not provide the Court with any authority for the proposition that a witness's false statements render the reporting officer's report untrustworthy and *Baker* appears to indicate otherwise. *See Baker, supra* at 557-558 ("It is also clear from the construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those

---

[3] This is true as to both the Plemmons and Hughes Affidavits and the Bretz notes. Each of these officers is listed as a will call witness by Plaintiff. Any inconsistencies or weaknesses in their reports can be brought out by Siemens on cross-examination.

which are made by a preparer of the report from disputed evidence, as contrasted to those facts which are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report' called for under Rule 803(8)(B).") Siemens relies on *United States v. Hite*, 364 F.3d 874, 883 (7th Cir. 2004) but *Hite* does not stand for the proposition that a contradictory statement must be excluded. The court in *Hite* ruled that the trial court did not err in excluding a witness' hearsay statement where all of the available evidence was contrary to the alleged hearsay statement. *Id.* at 883. The mere fact that Tom Wellinger may have lied or contradicted himself in his statement does not make Hughes' affidavit recounting those statements untrustworthy. Simply because information that is received by the reporting officer and incorporated into the report later turns out to be false or contradicted by other evidence, or as in the case of the Hughes and Plemmons affidavits may not ultimately yield fruitful information, does not render the reporting of those facts or opinions untrustworthy. *See Clark*, 20 F.3d at 1294 (holding that the bias of witnesses interviewed does not render the police report itself untrustworthy, as such bias cannot be imputed to the investigating officers). Siemens will have an opportunity to challenge the reliability of the Hughes Affidavit. *See Dortch*, 588 F.3d at 403, 404 (even though the officer's deposition and trial testimony differed from his report, this did not affect the trustworthiness of the report, which plaintiff was free to challenge on cross-examination.)

  **2.**  **The Plemmons Affidavit**

An arrest affidavit fits within the 803(8)(C) exception to the hearsay rule if it does not otherwise indicate a lack of trustworthiness. *State Farm,* 767 F. Supp. 1153. The entirety of the Plemmons Affidavit is based either on personal observation or on the factual information gathered from the interview with Ed Arlin, Tom Wellinger's boss, whose statements, although not necessarily

based on his personal knowledge, are non-hearsay party opponent admissions. *See* Opinion and Order on Siemens' MIL Nos. 4-15. This affidavit is admissible in its entirety.

### 3. The Bretz Notes

Officer Bretz's Notes, which are contained in the Farmington Hills Police Report, are based entirely on the Siemens witness interviews which this Court has already concluded are non-hearsay party opponent admissions under Fed. R. Evid. 801(d)(2). *See* Opinion and Order on Siemens' MIL Nos. 4-15. Officer Bretz's notes, which are contained in the Farmington Hills Police Report and were taken during the course of Officer Bretz's investigation of the fatal crash, and which were relied on by Officer Hughes in reaching his opinions and conclusions in his affidavit, are admissible under 803(8)(C) as part of that report.

### B. The Relevance of the Evidence in the Affidavits and Notes

The Sixth Circuit has adopted a very liberal standard for the determination of relevancy. *Dortch, supra* 588 F.3d at 400 ("The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence. Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed.R.Evid. 401.") (citing *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *Whittington*, 455 F.3d at 738-739 (internal quotation marks and citation omitted).

The Court has already determined in several previous Opinions and Orders addressing Siemens' motions *in limine* that evidence tending to establish Siemens' knowledge of Tom

13

Wellinger's history of alcohol problems and tending to show that they should have known of his intoxication the day of the accident is highly relevant to both Plaintiff's vicarious and direct theories of liability.  In proving its vicarious liability claim, Plaintiff will be required to establish that Siemens stood to benefit from Mr. Wellinger's attendance at his doctor's appointment the day of the accident.  In order to establish that his attendance would result in a benefit to Siemens, Plaintiff must be able to establish that Mr. Wellinger's drinking habits previously had an adverse affect on his job performance.  Proof of this fact is crucial to Plaintiff's vicarious liability claim and evidence tending to establish that Mr. Wellinger's job performance suffered as a result of his drinking and related problems is highly relevant to establishing this fact.  The affidavits and notes bear directly on this issue.

As to Plaintiff's direct liability claim, a critical issue before the jury will be whether Siemens knew or should have known that the conduct Wellinger was exhibiting the day of the accident was consistent with conduct he had exhibited on prior occasions when he was suspected of being intoxicated and whether Siemens should have entrusted Mr. Wellinger with the responsibility it imposed on him that day to attend his doctor's appointment.  While Siemens attempts to limit the permissible use of such evidence to the "rare instance" where the same individual both observed these behaviors on prior occasions and on the day of the accident, the Court disagrees that the permissible scope of such evidence is so limited.  In establishing whether Siemens "knew or should have known" of Mr. Wellinger's intoxication on the day of the accident, evidence of prior instances of drunken behavior, which were known by management or generally known among the employees, are highly relevant to proof of Siemens' knowledge.  The affidavits and the notes bear directly on this issue.  Also relevant to Plaintiff's direct liability claim will be evidence establishing Tom

14

Wellinger's actual intoxication or use of alcohol the day of the accident. The fact that the investigators were never able to establish exactly where or when Mr. Wellinger drank that day, a point that Siemens continues to emphasize, has no bearing on the issue of whether Siemens was or should have been aware that Mr. Wellinger was exhibiting signs of intoxication on the day of the accident. Thus, any evidence contained in the affidavits or notes that "has the slightest probative worth" any of these issues is relevant.

**IV.  CONCLUSION**

Accordingly, the Court DENIES Siemens' Motions *in limine* Nos. 18, 19 and 20, Dkt. Nos. 78, 79 and 80 and will permit Plaintiff to introduce trial exhibits 134, 150 and 151.

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 22, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 22, 2010.

S/Denise Goodine
Case Manager